No. 22-35271

_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

PROJECT VERITAS; PROJECT VERITAS ACTION FUND,

    Plaintiffs-Appellants,

        v.

MICHAEL SCHMIDT, in his official capacity as Multnomah County District
Attorney; ELLEN ROSENBLUM, in her official capacity as Oregon Attorney
General,

    Defendants-Appellees.

_____

APPELLEES' BRIEF

_____

Appeal from the United States District Court
for the District of Oregon

_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
MICHAEL A. CASPER
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone:  (503) 378-4402
michael.casper@doj.state.or.us

Attorneys for Appellees

_____
_____

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ISSUES PRESENTED FOR REVIEW ................................................................2

STATEMENT OF JURISDICTION ....................................................................3

STATEMENT OF THE CASE .............................................................................3

    A.    Oregon's Wiretap Law, Or. Rev. Stat. § 165.540............................3

    B.    The Proceedings Below....................................................................6

SUMMARY OF ARGUMENT .............................................................................8

STANDARD OF REVIEW .................................................................................11

ARGUMENT.......................................................................................................12

    A.    Or. Rev. Stat. § 165.540 is a content-neutral regulation to
           which intermediate scrutiny applies................................................12

          1.    Content-neutral regulations on secretly recording
                conversations are subject to intermediate scrutiny.............12

          2.    Or. Rev. Stat. § 165.540 is content neutral........................15

          3.    Plaintiffs' contention that the exceptions to the notice
                requirement render the law content-based is incorrect.......17

    B.    Or. Rev. Stat. § 165.540 is narrowly tailored to serve a
           significant government interest.......................................................23

          1.    Or. Rev. Stat. § 165.540 serves a significant
                government interest..............................................................23

               a.    Assuring citizens that their conversations are
                      not being recorded without notice is a
                      significant government interest ................................23

               b.    Plaintiffs' arguments to the contrary are without
                      merit.........................................................................25

2.   Or. Rev. Stat. § 165.540 is narrowly tailored to serve
     that interest.................................................................. 30

3.   Plaintiffs' argument that the exceptions to Or. Rev.
     Stat. § 165.540(1)(c) render the law fatally
     underinclusive and overinclusive are without merit........... 34

C.   Plaintiffs' substantial overbreadth challenge also fails..................40

D.   Plaintiffs have not alleged a justiciable "as-applied"
     challenge to the notice requirements.............................................42

CONCLUSION....................................................................................47

# TABLE OF AUTHORITIES

## Cases Cited

*Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*,
846 F.3d 391 (D.C. Cir. 2017) ...................................................................18

*Am. Civil Liberties Union of Illinois v. Alvarez*,
679 F.3d 583 (7th Cir 2012).................................................. 16, 20, 25, 41

*Animal Legal Def. Fund v. Wasden*,
878 F.3d 1184 (9th Cir. 2018)...................................................... 13, 14, 15

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
140 S. Ct. 2335 (2020) ...........................................................................18

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ................................................................... 7, 23, 46

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) ......................11

*Branzburg v. Hayes*,
408 U.S. 665, 92 S. Ct. 2646, 33 L.Ed. 2d 626 (1972) ..........................33

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ...............................................................................40

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .................................................................................18

*Cohen v. Cowles Media Co.*,
501 U.S. 663, 111 S. Ct. 2513, 115 L.Ed. 2d 586 (1991) ......................33

*Dieteman v. Time Inc.*,
449 F.2d 245 (9th Cir. 1971)...................................................................25

*Dietemann v. Time, Inc.*,
449 F.2d 249 (9th Cir. 1971)...................................................................32

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011)...................................................................11

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) ...............................................................................24

*Fields v. City of Philadelphia*,
862 F.3d 353 (3d Cir. 2017)....................................................................41

iii

*Foti v. City of Menlo Park,*
146 F.3d 629 (9th Cir. 1998).....................................................................22

*Glendale Assocs., Ltd. v. N.L.R.B.,*
347 F.3d 1145 (9th Cir. 2003)....................................................................18

*Glik v. Cunniffe,*
655 F.3d 78 (1st Cir 2011) .........................................................................41

*Hoye v. City of Oakland,*
653 F.3d 835 (9th Cir. 2011).....................................................................46

*IMDb.com Inc. v. Becerra,*
962 F.3d 1111 (9th Cir. 2020)...................................................................15

*In re Cutera Securities Litig.,*
610 F.3d 1103 (9th Cir. 2010)...................................................................11

*In re Nat'l Sec. Letter,*
863 F.3d 1110 (9th Cir. 2017)...................................................................15

*Lone Star Sec. & Video, Inc. v. City of Los Angeles,*
827 F.3d 1192 (9th Cir. 2016)...................................................................16

*One World One Family Now v. City & Cty. of Honolulu,*
76 F.3d 1009 (9th Cir. 1996).....................................................................18

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
460 U.S. 37 (1983).....................................................................................14

*Project Veritas Action Fund v. Rollins,*
982 F.3d 813 (1st Cir 2020),
*cert. den*, 142 S. Ct. 560, 211 L. Ed. 2d 350 (2021) ..................................
........................................................................... 16, 24, 41, 43, 44, 46

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015)............................................................. 14, 15, 16

*Shulman v. Group W Prods., Inc.,*
18 Cal. 4th 200, 955 P.2d 469 (1998) ......................................................32

*State v. Caraher,*
293 Or. 741 (1982) ....................................................................................27

*State v. Evensen,*
298 Or App 294, 447 P3d 23 (2019),
*rev den,* 366 Or 64 (2019) ........................................................................39

iv

*State v. Lissy,*
    304 Or 455, 747 P2d 345 (1987)........................................................3, 38

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000)................................................46

*Turner Broad. Sys., Inc. v. F.C.C.,*
    512 U.S. 622 (1994) ................................................ 16, 30

*United States v. Jacobsen,*
    466 U.S. 109 (1984) ................................................27

*United States v. White,*
    401 U.S. 745 (1971) ................................................26

*Virginia v. Hicks,*
    539 U.S. 113 (2003) ................................................40

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .................................... 14, 23, 30, 31, 36

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
    471 U.S. 626 (1985) ................................................37

*Zemel v. Rusk,*
    381 U.S. 1, 85 S. Ct. 1271, 14 L.Ed. 2d 179 (1965) ................................33

## Constitutional and Statutory Provisions

28 U.S.C. § 1291................................................................3

28 U.S.C. § 1331................................................................3

O.R.S. § 165.535(1)................................................................4

O.R.S. § 165.540................................................................
    1-3, 6, 7, 8, 9, 10, 12, 15, 19, 23, 27, 30, 31, 34, 37, 38, 39, 40, 42, 43, 47

O.R.S. § 165.540(1)(a)................................................ 3, 13, 37

O.R.S. § 165.540(1)(b) ................................................4

O.R.S. § 165.540(1)(c)................................................................
    ....................4, 8, 13, 15, 16, 17, 19, 21, 22, 23, 25, 28, 31, 34, 37, 39, 42

O.R.S. § 165.540(1)(d) ................................................7

O.R.S. § 165.540(1)(e)................................................7

O.R.S. § 165.540(3)................................................38

O.R.S. § 165.540(5) ..............................................................20

O.R.S. § 165.540(5)(a) ................................................. 4, 17, 21

O.R.S. § 165.540(5)(b) .............................................. 17, 19, 42

O.R.S. § 165.540(6)(a) ......................................................5, 31

O.R.S. § 165.540(6)(b) ..........................................................5

O.R.S. § 165.540(6)(c) ..........................................................5

Or. Laws. 1955, ch. 675 § 2 ..............................................38

Or. Rev. Stat. § 41.910(1) ..................................................27

U.S. Const., Amend. I ................. 1, 2, 6, 13, 24, 25, 33, 37, 41, 45, 46

U.S. Const., Amend. IV ................................... 9, 26, 27, 28

## Other Authorities

Alan F. Westin,
*The Wire-Tapping Problem: An Analysis and A Legislative Proposal,*
52 Colum. L. Rev. 165 (1952) ................................................29

Fed. R. App. P. 4(a)(1)(A) ....................................................3

Fed. R. Civ. P. 12(b)(6) ......................................................11

Oregon Senate Cmte. on Judiciary,
SB 165, Feb. 17, 1955, http://records.sos.state.or.us/ORSOSWeb
Drawer/RecordView/3199905 ..............................................29

Paul M. Schwartz & Daniel J Solove,
Privacy Law Fundamentals 88 (2d ed. 2015) ..........................12

# APPELLEES' BRIEF

## INTRODUCTION

Oregon law generally prohibits recording a conversation without notifying each of the participants that the conversation is being recorded. The primary question in this case is whether that notice requirement, which is intended to safeguard individual privacy by ensuring that citizens are aware when their conversations are being recorded, facially violates the First Amendment. As the District Court correctly concluded, the answer to that question is no. Audio recordings are indeed expressive speech, the creation of which implicates the First Amendment. But the First Amendment does not confer an unfettered right to secretly record conversations without informing the participants, nor does it prevent states from imposing reasonable notice requirements to protect privacy. Oregon's notice requirement is a reasonable and narrowly tailored restriction that allows for recording conversations while also respecting individual privacy. It is constitutionally permissible.

Plaintiffs also claim that even if Or. Rev. Stat. § 165.540 is not facially unconstitutional, it is unconstitutional as applied to their organization. But plaintiffs' have not alleged an "as applied" challenge that is ripe for adjudication. Plaintiffs are in the business "undercover newsgathering"—engaging subjects in conversations that plaintiffs surreptitiously record, in the

hope of eliciting and recording the subjects making newsworthy statements or admissions that plaintiffs can then publish. Plaintiffs have alleged various hypothetical scenarios in which they wish to engage in undercover recordings, and they have also alleged a need to go "where their stories take them" and to record public officials or "ordinary citizens" throughout Oregon as the need arises. To accomplish that, plaintiffs seek a blanket declaration that Or. Rev. Stat. § 165.540 is unconstitutional "as applied" to their organization, giving them special license to make secret recordings in any circumstance as they see fit. Plaintiffs are not entitled to that relief. Even if there might be circumstances in which plaintiffs have a constitutionally protected right to make surreptitious recordings, the existence of that constitutional right necessarily depends on the nature, scope, and circumstances of the conversation that plaintiffs wish to secretly record. But the specific facts needed to assess the constitutionality of a particular recording are not presented here.

### ISSUES PRESENTED FOR REVIEW

1.     Or. Rev. Stat. § 165.540 prohibits recording a conversation without giving notice to each of the participants that the conversation is being recorded. Does that notice requirement facially violate the First Amendment?

2.     Is plaintiffs' claim that Or. Rev. Stat. § 165.540 is unconstitutional "as applied" to their organization ripe in the absence of particularized facts

regarding the nature and circumstances of the conversation being secretly recorded?

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this federal question case under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The District Court entered final judgment of dismissal on March 7, 2022. (ER-3). The notice of appeal was filed on April 1, 2022, (ER-112), which made it timely under Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE CASE

### A.   Oregon's Wiretap Law, Or. Rev. Stat. § 165.540

At issue in this case in the constitutionality of Or. Rev. Stat. § 165.540, which is frequently referred to as Oregon's "wiretap" law. Or. Rev. Stat. § 165.540 generally prohibits people from recording or otherwise "obtain[ing]" communications without the consent of all or some of the participants, and from using or divulging the contents of communications so obtained.  When the law was first enacted in 1955, it applied only to telephone or radio communications (hence the "wiretap" moniker), and those provisions remain.[1] Four years later,

---

[1]     *See generally, State v. Lissy*, 304 Or 455, 465, 747 P2d 345, 350 (1987) (describing history of Wiretap law, and the Oregon legislature's expansion of law to include face-to-face conversations). *See also*, Or. Rev. Stat. § 165.540(1)(a) (generally prohibiting non-participants from obtaining telephone or radio communications without consent); Or. Rev. Stat. §

*Footnote continued…*

however, the Oregon legislature expanded it to also include face to face conversations, which may not be obtained without the knowledge of all participants.  Thus, under Or. Rev. Stat. § 165.540(1)(c), a person generally may not "obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."[2]

The notice requirement in Or. Rev. Stat. § 165.540(1)(c) is subject to several exceptions. For example, no notice is required if the conversation is being recorded by a person in that person's own home, or if the conversation occurs during a felony that endangers life, Or. Rev. Stat. § 165.540(5)(a).  In addition, there are also exceptions for recordings made by and of law enforcement officers while on duty.  The notice requirement thus does not apply to recordings that are made by a law enforcement officers' body camera or dash cam, if the officer did not have an opportunity to notify the participants that the

---

*(...continued)*
165.540(1)(b) (generally prohibiting tampering with telephone or radio equipment with intent to obtain intercept communications).

[2]    The word "conversation" in turn is specifically defined to mean "the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication." Or. Rev. Stat. § 165.535(1).

conversations was being obtained and as long as the officer is in uniform and on duty. Or. Rev. Stat. § 165.540(5)(d). Conversely, the notice requirement does not apply to the recording of "a conversation in which a law enforcement officer is a participant," so long as the officer is performing official duties, the conversation is "audible to the person by normal unaided hearing," and the "the recording is made openly and in plain view of the participants." Or. Rev. Stat. § 165.540(5)(b).

The law also includes exceptions to the notice requirement that allow for openly recording conversations in settings where the conversation is intended to be public or where recording could reasonably be expected to occur. The law thus allows for the use of "an unconcealed recording device" to record "public or semipublic meetings" "such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallies and sporting or other events," Or. Rev. Stat. § 165.540(6)(a) as well as classes or educational activities, Or. Rev. Stat. § 165.540(6)(b). The law also allows for the open recording of private meetings if everyone involved "knew or reasonably should have known that the recording was being made," Or. Rev. Stat. § 165.540(6)(c).

**B.    The Proceedings Below**

Plaintiffs, Project Veritas and Project Veritas Action Fund, are media organizations that are engaged "almost exclusively in undercover investigative journalism." (ER-89). They initiated this action in 2020 to challenge the constitutionality of Or. Rev. Stat. § 165.540. In their complaint, plaintiffs alleged that Or. Rev. Stat. § 165.540 violates the First Amendment on its face and as applied to their organizations. (ER-99–102). Describing their methods, plaintiffs explained that "employing surreptitious recording is the primary method through which [plaintiffs] are able to uncover newsworthy matters concerning government fraud, abuses in the political process, and other issues of public concern. They never specifically inform subjects about recording because subjects will not share truthful, or, at least, candid information when notice is provided. Similarly, [plaintiffs] rarely record openly because subjects change their behavior and recollections when they detect a recording device." (ER-99).

Plaintiffs alleged that, but for the notice requirement in Or. Rev. Stat. § 165.540, they would use their "undercover newsgathering" techniques to investigate a variety of issues, including the violence in Portland between antifa groups and police forces and the 2019 resignation of the Oregon Public Records Advocate. (ER-95–96).

More generally, plaintiffs explained in their complaint that they have no way of knowing beforehand where their investigations will lead them. They claimed that they plan to "openly and secretly record other government officials and ordinary citizens throughout Oregon" but alleged that "[t]he details of [the investigations] cannot be known in advance." (ER-96).

Plaintiffs alleged that Or. Rev. Stat. § 165.540 is unconstitutional because the exceptions to the notice requirement favored certain speech, making the law impermissibly content based. (ER-99–101, "Count I"). Plaintiffs also alleged that the general notice requirement is overbroad and "bans the most effective means of gathering the news." (ER-101–102, "Count II").[3]

Plaintiffs sought injunctive and declaratory relief. Plaintiffs asked the court to enjoin enforcement of Or. Rev. Stat. § 165.540 against "activity that constitutes the secret audio recording of conversations * * *." (ER-103). Plaintiffs also asked the court to declare that Or. Rev. Stat. § 165.540 is

---

[3] In a separate count, Count III, plaintiffs also challenged Or. Rev. Stat. § 165.540(1)(d) and (e) which prohibit obtaining or disseminating recordings made by others. That count, which alleged that the provisions were unconstitutional under *Bartnicki v. Vopper*, 532 U.S. 514 (2001), is not at issue here. The district court initially denied the state's motion to dismiss as to that count. After state officials issued a statement clarifying that they do not enforce those provisions when doing so would be barred by *Bartnicki*, the parties subsequently filed a joint stipulation of dismissal as to that count, which the court below entered in final judgment on March 7, 2022. (ER-3).

"unconstitutional on its face" and that the notice requirement in Or. Rev. Stat. §
165.540(1)(c) is unconstitutional "as applied to [plaintiffs]." (ER-103).

Plaintiffs moved for a preliminary injunction, which the district court
denied. (CR 11, 27). The state then moved to dismiss the complaint. (CR 34).

After briefing and argument from the parties, the District Court granted the
state's motion with respect to Counts I and II. (ER-4–25). In its Order, the
District Court applied intermediate scrutiny and concluded that Or. Rev. Stat. §
165.540 is constitutional. The District Court reasoned that the statute is content
neutral and does not burden substantially more speech than necessary to serve
the government's significant interest in "safeguarding individual privacy." (ER-
19–24).

## SUMMARY OF ARGUMENT

The District Court correctly rejected plaintiffs constitutional challenge to
Or. Rev. Stat. § 165.540. The state has a significant interest in ensuring that its
citizens are aware when their conversations are being recorded.  Or. Rev.
Stat. 165.540 is a content-neutral law that is narrowly tailored to serve that
interest, while leaving ample room for people to record conversations or engage
in investigative journalism.  It therefore survives intermediate scrutiny and is
constitutionally permissible.

In challenging the district court's ruling, plaintiffs first argue that the law is in fact content-based, and therefore subject to strict scrutiny. In particular, plaintiffs argue that the exceptions to Oregon's notice requirement are content-based because anyone enforcing the law would have to listen to a recording to know whether an exception applied. But that is not accurate. None of exceptions in Or. Rev. Stat. § 165.540 depend on the content of what is being recorded, and instead all of them depend entirely on the circumstances in which the recording was made. Or. Rev. Stat. § 165.540 is content neutral.

Plaintiffs next argue that even applying intermediate scrutiny, Oregon's law in unconstitutional. Relying on Fourth Amendment caselaw, plaintiffs begin by contending that surreptitiously recording one's own conversations imposes only "minimal" and constitutionally insignificant privacy interests. But plaintiffs' reliance on Fourth Amendment case law in this context is misplaced. The Supreme Court has expressly recognized that the privacy of communication is an important interest. And the privacy implications of *secretly recording* a conversation extend beyond the concern that the contents of what has been communicated in a private conversation could be disclosed to others. Those concerns are amplified in this day and age, when, with the click of a button, a secret recording can instantly be texted, emailed, or posted to the internet and

transmitted globally. The state has a significant interest in ensuring that its citizens are aware when their conversations are being recorded.

Plaintiffs next argue that Or. Rev. Stat. § 165.540 is not narrowly tailored because it contains various exceptions to the notice requirement that, according to plaintiffs, do not serve the goal of protecting privacy and render the law both underinclusive and overinclusive. But the exceptions to the notice requirement are entirely consistent with the statute's the goal of protecting Oregonians from having their private conversations unwittingly made the subject of audio recordings without their knowledge. The exceptions generally allow for open recording without giving explicit notice in circumstances where the people being openly recorded can and should expect that their conversations are likely to be recorded, or where requiring separate notice would be impractical or unnecessary. The law is narrowly tailored.

Finally, plaintiffs also argue that the law is facially unconstitutional because it is substantially overbroad. To prevail on that argument, however, plaintiffs bear the heavy burden of showing that the law punishes a substantial amount of protected speech in relation to the statute's plainly legitimate sweep. Plaintiffs do not and cannot carry that burden.

In addition to claiming Or. Rev. Stat. § 165.540 is facially unconstitutional, plaintiffs also contend that the law is unconstitutional as

applied to their organization. But plaintiffs' have not alleged an "as applied" challenge that is ripe for adjudication. Even if there might be circumstances in which plaintiffs have a constitutionally protected right to make surreptitious recordings as part of their "undercover newsgathering" operation, the existence of that constitutional right necessarily depends on the nature, scope, and circumstances surrounding the conversation that plaintiffs wish to secretly record. But the specific facts needed to assess the constitutionality of a particular recording are not presented here.

## STANDARD OF REVIEW

This Court reviews *de novo* a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). Although a complaint attacked by a motion to dismiss does not need "detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) (internal citation omitted). A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible on its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).

## ARGUMENT

As explained below, plaintiffs' facial challenge to Or. Rev. Stat. §

165.540 fails because the law is a neutral, narrow, and constitutionally

permissible regulation on recording conversations that serves a significant

government interest. Contrary to plaintiffs' arguments, nothing about the

exceptions to Oregon's notice requirement render the law content based, nor is

the law substantially overbroad. In addition, although plaintiff also contend that

the law is unconstitutional "as applied" to their organization, they do not

present a justiciable as-applied claim that is ripe for adjudication. This court

should therefore affirm.

**A. Or. Rev. Stat. § 165.540 is a content-neutral regulation to which intermediate scrutiny applies.**

**1. Content-neutral regulations on secretly recording conversations are subject to intermediate scrutiny.**

Regulations governing when and how a person may use a recording

device to capture the contents of a conversation have been enacted across the

country. In virtually every state, and as a matter of federal law, it is generally

unlawful to record a conversation without notifying at least one participant that

the conversation is being recorded.[4]  Whether it is sufficient to notify *only* one

---

[4]    See Paul M. Schwartz & Daniel J Solove, PRIVACY LAW FUNDAMENTALS 88 (2d ed. 2015).

participant, or whether instead is necessary for *all* participants to be notified of the recording, differs across different jurisdictions. In the majority of states—so-called "one-party consent" jurisdictions—it is sufficient to notify one participant to the conversation.[5] But in a substantial number of states—sometimes called "all-party consent" jurisdictions—all participants to a conversation must be notified.[6]

The creation of an audio recording is a form of speech, and, as a result, any regulation that requires a party to give notice to participants before recording a conversation implicates the First Amendment. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203-04 (9th Cir. 2018) (concluding that "the recording process is itself expressive and is inextricably intertwined with the resulting recording.") (internal quotation marks and citation omitted). Any such law is thus subject to constitutional scrutiny. *Id.*

The level of scrutiny that this Court applies in evaluating the constitutionality of the law depends on whether the law regulates speech on the

---

[5]     *Id.*

[6]     California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Montana, Nevada, New Hampshire, Pennsylvania, and Washington are all states with "all party" consent laws. *Id.* As explained below, Oregon has split system, with one-party consent required for telephone calls, Or. Rev. Stat. § 165.540(1)(a) and all-party notice required for face-to-face conversations, Or. Rev. Stat. §165.540(1)(c).

basis of its content. Speech regulations that are content-based are subject to the most heightened form of review, strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Applying strict scrutiny, this court will uphold a content-based law only if the law "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Wasden*, 878 F.3d at 1204 (*quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Regulations that implicate speech but that are not related to the content of speech, however, are subject to a less demanding standard. Is assessing the constitutionality of such laws, this court applies intermediate scrutiny. Under that level of scrutiny, a content neutral law is constitutionally permissible so long as it serves a significant state interest and is narrowly tailored to serve that interest. As the Supreme Court has explained, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (upholding restriction because the "government 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'" (citations omitted)).

**2.    Or. Rev. Stat. § 165.540 is content neutral.**

The regulation at issue here, Or. Rev. Stat. § 165.540(1)(c), which is an example of an "all party" notice law, prohibits recording face-to-face conversations, "if not all participants in the conversation are specifically informed that their conversation is being obtained." That general prohibition is content-neutral.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. "[A] speech regulation targeted at specific *subject matter* is content based* * *." *Reed*, 576 U.S. at 169. Thus, in *Reed*, the Supreme Court held that regulating messages about a "political candidate" differently from those advertising "an assembly of like-minded individuals" were "paradigmatic example[s] of content-based discrimination." *Id. See also*, *e.g.*, *Wasden,* 878 F.3d at 1204 (concluding regulation of recording "agricultural operations" content based); *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1123 (9th Cir. 2017) (regulation regarind the receipt of an FBI records request content based), *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020)(regulation on publication of "date of birth or age information").

On the other hand, distinctions based on the medium of the communication or otherwise unrelated to the message conveyed are content-

neutral. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 648 (1994) (holding requirement to carry local television stations is content-neutral); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200 (9th Cir. 2016) (holding ordinances banning mobile billboards are content-neutral because they "do not single out a specific subject matter for differential treatment, nor is any kind of mobile billboard exempted from regulation based on its content").

Applying the principles just discussed, other circuit courts have concluded that restrictions on eavesdropping and secret recording are subject to intermediate scrutiny. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 835 (1st Cir 2020), *cert. den*, 142 S. Ct. 560, 211 L. Ed. 2d 350 (2021) (applying intermediate scrutiny to Massachusetts "all party" consent law); *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 604 (7th Cir 2012) (suggesting same for Illinois eavesdropping law). This court should reach the same conclusion here.

By its plain terms, the general notice requirement in Or. Rev. Stat. § 165.540(1)(c) is content-neutral, because it applies regardless of the subject-matter of the conversation recorded. The law's application does not turn on "the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163. The law governs the manner in which a recording can be made—only with notice to

the participants—but applies irrespective of the content of the conversation is being recorded, and without regard to the subject matter or viewpoints of those being recorded. In addition, the law's purpose is not to alter or influence the content of recorded conversations. The justification for the law is simply to provide individuals fair notice when another person is recording them, and it does that without regard to the contents of what is being recorded. Or. Rev. Stat. § 165.540(1)(c) is content neutral.

### 3. Plaintiffs' contention that the exceptions to the notice requirement render the law content-based is incorrect.

Despite the fact that Oregon's notice requirement in Or. Rev. Stat. § 165.540(1)(c) is content neutral, plaintiffs insist that the law as a whole is content-based. In particular, they argue that some of the exceptions that the legislature has created, which, as noted above, modify or relax the notice requirements in certain circumstances, are themselves content-based. More specifically, plaintiffs argue that two of the exceptions—one that allows for the open-recording of police officers while on duty, Or. Rev. Stat. § 165.540(5)(b) and another that allows for recording without notice during a felony that endangers a human life, Or. Rev. Stat. § 165.540(5)(a), are content-based exceptions because "one must examine the content of the recorded communications to determine" whether the exception applies. (App. Br. at 12). But plaintiffs are wrong.

"Courts consider a rule content-based when it establishes a general ban on speech, but maintains exceptions for speech on certain subjects." *Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1155 (9th Cir. 2003) (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 60 (1994)) (emphasis added). For example, a prohibition on all residential picketing is content-neutral, but excepting one subject matter, such as labor disputes, from that prohibition renders it content-based. Likewise, a law may ban all unsolicited robocalls, but exempting only robocalls attempting to collect government debts from that prohibition subjects the law to strict scrutiny. *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020). But an exception is only content-based when it turns on the subject matter of the communication, and thus discriminates against disfavored topics. *See One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009, 1012 n.5 (9th Cir. 1996) (finding exceptions to an ordinance prohibiting sidewalk sales allowing the sale of newspapers, concessions, and parade-related buttons and souvenirs did not render the ordinance content-based); *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 405 (D.C. Cir. 2017) (holding different rules for signs announcing events are not content-based "as long as it does not distinguish among types of event[s] based on content").

None of exceptions in Or. Rev. Stat. § 165.540 depend on the content of what is being recorded. As noted, plaintiffs rely in particular on two exceptions. The first of these is Or. Rev. Stat. § 165.540(5)(b). Under that provision, notwithstanding the notice requirement in Or. Rev. Stat. § 165.540(1)(c), a person may record a conversation in which a police officer is a participant if four criteria are met: (a) the recording is made while the officer is performing official duties;(b) the recording is made openly and in plain view of the participants in the conversation;(c) the conversation being recorded is audible to the person by normal unaided hearing; and (d) the person is in a place where the person lawfully may be. None of the criteria under that provision have anything to do with the content of the conversation that is being recorded.

Because none of the criteria in Or. Rev. Stat. § 165.540(5)(b) has anything to do with the content of the conversation that has been recorded, it is not necessary to listen to the audio recording to determine whether the criteria have been meet. A person who witnessed the recording being made would be able to determine whether it was lawfully made or not, regardless of whether they could also hear or understand any of the conversation being recorded. Indeed, as a practical matter, while it is possible that listening to an audio recording of a conversation may provide clues as to whether some of criteria were met, it is also possible—even likely—that the contents of the audio record

will tell the listener nothing about whether any of the criteria were met. What is necessary to know is not what was said during the conversation, but what the circumstances were when the recording was made.

Plaintiffs' argument that the state would need to listen the recording to determine whether the exception applies is not just factually incorrect, it also misses the point. Whether an exception is content-based turns not on the practicalities of how one might try to determine whether the exception has been met, but on the abstract legal question of whether application of the exception depends on the contents of the conversation being recorded. *See Alvarez*, 679 F.3d at 603 (7th Cir 2012) (rejecting argument eavesdropping statute should be treated as a content-based restriction because its enforcement required an examination of the audio recording to determine whether a violation has occurred). If it were the case that the *only* way to determine whether the exception applied would be to listen to the recording because application of the exception depended on the contents the conversation that was recorded, then the exception would indeed be content based. But that is not the case. For purposes of Or. Rev. Stat. § 165.540(5), the contents of the recorded conversation have no bearing on whether the exception applies. The exception is therefore content neutral.

Plaintiffs make a similar mistake when they argue that another exception, set forth in Or. Rev. Stat. § 165.540(5)(a), is content based. Under that exception, notwithstanding Or. Rev. Stat. § 165.540(1)(c), a person may record a conversation without providing notice to the participants if the conversation is recorded "during a felony that endangers human life." Plaintiffs again argue that exception is content based because, "[t]he only way the government knows if the recording is legal is by examining its content." (App. Br. at 19). That is incorrect. A person who witnessed the recording being made would know if the exception applied on the basis of the circumstances in which it was made, even if that person could not hear or understand the conversation. The pertinent question in determining whether this exception to the notice requirement is content based is whether, as an abstract matter, a person wanting to know whether the exception applied to a recording would necessarily have to listen to the recording to determine whether the exception applies *because the applicability of the exception depends on the content of what was recorded*. The answer to *that* question is no; whether the exception applies does not depend on the contents of the recording. It depends on criteria wholly apart from the contents of the recording, namely if it was recorded during a felony that endangers a human life.

In arguing that Oregon's exceptions are content based, plaintiffs rely on *Foti v. City of Menlo Park,* 146 F.3d 629, 636 (9th Cir. 1998), but that case is readily distinguishable. In that case, this Court found that an otherwise content neutral ban of signs on public property became content based because of content-based exceptions that had been carved into the law. In particular, the law allowed for real estate signs advertising an "open house," and also allowed public informational signs conveying information about things like safety or traffic. This court explained that those exceptions were content-based because their applicability *vel non* depended on their content. As a result, one would necessarily have to know the content of the signs to know whether the exception applied.

For the reasons already explained, the exceptions to Or. Rev. Stat. § 165.540(1)(c) are different. Unlike the exceptions to the regulation at issue in *Menlo Park*, the applicability of the exceptions to Or. Rev. Stat. § 165.540(1)(c) do not depend on the content of what has been recorded. As a result, unlike in *Menlo Park*, one does not need to know the contents of the recorded conversation to know whether the exceptions to Or. Rev. Stat. § 165.540(1)(c) apply.

In short, plaintiffs' contention that the exceptions to Or. Rev. Stat. § 165.540(1)(c) render the law content-based is without merit. Plaintiffs have not

shown, and cannot show, that any of the exceptions to the notice requirement are in fact "content based." They are not.

## B. Or. Rev. Stat. § 165.540 is narrowly tailored to serve a significant government interest

Because Oregon's "all party" notice law does not distinguish based on the content of the intercepted conversations, that requirement is constitutionally permissible so long as it is "narrowly tailored to serve a significant governmental interest," *Ward*, 491 U.S. at 791. Oregon's law meets that test.

### 1. Or. Rev. Stat. § 165.540 serves a significant government interest.

#### a. Assuring citizens that their conversations are not being recorded without notice is a significant government interest

All-party notice laws like Or. Rev. Stat. § 165.540(1)(c) protect a significant government interest. As the Supreme Court has recognized, the "[p]rivacy of communication is an important interest." *Bartnicki*, 532 U.S. at 532. In addition, "the fear of public disclosure of private conversations might well have a chilling effect on private speech." *Id.* at 533. Recording a conversation without notice violates the privacy of the unwitting participant who does not know the conversation is being recorded and who may not wish to be made part of a recording.

Importantly, secretly recording a conversation has privacy implications that extend beyond the concern that information intended be confidential could

be overheard or revealed. A person legitimately may wish to know whether his or her conversation is being recorded for a variety of reasons. A recording, once made, exists in perpetuity, and can readily be broadcast and rebroadcast, perhaps shorn of context and even edited. Those concerns are amplified in this day and age, when virtually everyone is carrying a smartphone or other technology capable of recording a conversation, and when, with the click of a button, a secret recording can instantly be texted, emailed, or posted to the internet and transmitted globally. For all these reasons, citizens have a legitimate privacy interest in knowing whether their conversations are being recorded and being afforded an opportunity to decide whether and how they wish to participate in such a recording before it is presented to the world. *See Rollins*, 982 F.3d at 838 (1st Cir 2020) ("Notice of recording may help [] private individuals avoid the shame or embarrassment of the recording of their unfiltered comments or help prevent their statements from being taken out of context."). "The First Amendment securely protects the freedom to make—*or decline to make*—one's own speech; it bears less heavily when speakers assert the right to make other people's speeches." *Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003) (rejecting First Amendment challenge to copyright extension). Oregon's law also recognizes and protects privacy in this broader sense by assuring that citizens are aware of when they are being recorded.

By protecting privacy, Or. Rev. Stat. § 165.540(1)(c) also facilitates trust and encourages communication. For example, strangers are welcomed to many gatherings—such as twelve-step groups, religious services, and political campaign activities—on the assumption that they come in good faith, not to make recordings to publicly embarrass other participants. Prohibiting secret recordings facilitates trust by such organizations and limits the damage that a bad-faith newcomer could do by distributing a surreptitious recording to a worldwide audience. An organization "should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording, or in our modern world, in full living color and hi-fi to the public at large or to any segment of it that the visitor may select." *Dieteman v. Time Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (upholding invasion of privacy claim for undercover secret recording over First Amendment defense). *See also, Alvarez*, 679 F.3d at 607 n.13 (regulations on "surreptitious" recording more likely to survive constitutional scrutiny because "surreptitious recording brings stronger privacy interests into play.").

### b.    Plaintiffs' arguments to the contrary are without merit.

For their part, plaintiffs acknowledge that secretly recording a conversation implicates privacy interests and that the government has interest in protecting that privacy. For instance, plaintiffs concede that when someone

secretly eavesdrops on a conversation to which they are not a participant, "the government interest is manifest." (App. Br. 22). But plaintiffs contend that so long as at least one party to a conversation is aware that the conversation is being recorded, the fact that other parties to the conversation are oblivious to the recording does not implicate any constitutionally significant privacy concerns. Plaintiffs thus contend that so long as one party to a conversation is aware that the conversation is being recorded, the privacy interests of the other participants in knowing that the conversation is being recorded are "limited," (App. Br. 29), and "[a]t best * * * tenuous", (App. Br. 31), and "minimal," (App. Br. 26).

In support of the proposition that secretly recording a conversation has only "minimal" privacy implications, plaintiffs look to Fourth Amendment case law. They thus note that under the Fourth Amendment, the government may not engage in eavesdropping without a warrant, the government can use an agent wearing a wire to obtain incriminating information. *See United States v. White*, 401 U.S. 745, 749 (1971)(upholding use of wired informant and concluding that Fourth Amendment "affords no protection to 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.'" (*quoting Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)).

Plaintiffs' reliance on Fourth Amendment caselaw is misplaced in this context. Those cases are focused whether the undercover use of wire constitutes a government search, as the Fourth Amendment "proscrib[es] only governmental action." *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also id.* (noting the Fourth Amendment is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." (citations and quotations omitted)). In addition, the floor of personal privacy established by the Fourth Amendment against government searches is not a ceiling prohibiting the states from enacting greater protections for privacy in other contexts. The Fourth Amendment does not even establish the ceiling for state protections against unreasonable searches and seizures. *See, e.g.*, *State v. Caraher*, 293 Or. 741, 750–51 (1982) (noting that the Oregon Supreme Court may "interpret [Oregon's] own constitutional provision regarding search and seizure and to impose higher standards on searches and seizures under our own constitution than are required by the federal constitution."). Or. Rev. Stat. § 41.910(1) (barring use of evidence obtained in violation of Or. Rev. Stat. § 165.540 in criminal prosecutions). Put simply, whether secretly recording a conversation would constitute an unreasonable search in violation of the Fourth Amendment if the government

were to do it is an entirely different question than whether Oregonians have a significant interest in knowing whether their conversations with others are being recorded. Nothing in Fourth Amendment case law begins to suggest that the state has only a "minimal" or "tenuous" interest in ensuring that citizens are aware of when their conversations are being recorded.

In addition to suggesting that the privacy implications of secretly recording conversations is minimal, plaintiffs also suggest that Oregon's notice requirement was never *really* about protecting privacy at all. In that regard, plaintiffs suggest that what really motivated the Oregon legislature to enact Or. Rev. Stat. § 165.540(1)(c) in 1959 was a concern for "candor"—*i.e.*, a concern that the fear of being secretly recorded would chill speech, and inhibit people from speaking freely. In support of that thesis, they cite a 1967 book by Professor Alan Westin, as well as testimony that the Professor Westin gave discussing that concern in Massachusetts in 1968. Plaintiffs then proceed to argue that the mere interest in promoting "candor" is insufficient and that a notice requirement "cannot be sustained" on that basis. (App. Br. 29-30).

That argument fails for several reasons. First, as a historical matter, plaintiffs present no evidence to support their assertion that the enactment of Or. Rev. Stat. § 165.540(1)(c) is rooted primarily in a concern for candor as opposed to safeguarding privacy. The subsequent work of Professor Westin on

which plaintiffs rely hardly sheds light on the Oregon legislature's purpose: It is

unlikely that the 1959 Oregon legislature was influenced by a book that was

published 8 years later, or testimony that happened 9 years later (and in

Massachusetts).[7] Furthermore, even assuming that the Oregon legislature had

been concerned about "candor" and the possibility that allowing secret

recordings would chill speech, that obviously does not foreclose it from *also*

being concerned about the very obvious and very significant *privacy*

implications of secret recording conversations. Moreover, for reasons already

discussed, the concerns about violating privacy that would already have been

obvious in 1959 have since grown exponentially, given the advent and

proliferation of technology that makes it trivial for anyone at any time to

secretly record a private conversation and disseminate it to the world.

---

[7] In a footnote, plaintiffs note that 1955 legislative committee discussing Oregon's original wiretap law cited a 1952 law review article by Westin. (App. Br. at 29 n. 9). But the committee cited that article only to note that it contained a list of states with wiretap laws. *See* Oregon Senate Cmte. on Judiciary, SB 165, Feb. 17, 1955, at 1 available at http://records.sos.state.or.us/ORSOSWebDrawer/RecordView/3199905

Moreover, the article cited is not about candor but about need to "protect the citizen's privacy from undesired invasions." Alan F. Westin, *The Wire-Tapping Problem: An Analysis and A Legislative Proposal,* 52 COLUM. L. REV. 165 (1952).

In short, plaintiffs' suggestion that citizens have only a minimal interest in knowing whether their conversations are being recorded is unsupported and unsupportable. Or. Rev. Stat. § 165.540 serves a significant government interest.

### 2. Or. Rev. Stat. § 165.540 is narrowly tailored to serve that interest

Or. Rev. Stat. § 165.540 is also narrowly tailored to serve the government's interest in protecting the privacy of its citizens. To be narrowly tailored, "a regulation need not be the least speech-restrictive means of advancing the Government's interests." *Turner Broad. Sys., Inc.*, 512 U.S. at 662. Rather, a law is narrowly tailored so long as the "'regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* (*quoting Ward*, 491 U.S. at 799). "Narrow tailoring in this context requires, in other words, that the means chosen do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* (*quoting Ward*, 491 U.S. at 799). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800.

Or. Rev. Stat. § 165.540 does not "burden substantially more speech than is necessary to further" the legitimate State interest in protecting individuals from being recorded without their knowledge. Under Or. Rev. Stat. § 165.540(1)(c), recording is allowed so long as the participants to the conversation have been notified. That is a modest requirement—the law does not require the person making the recording to obtain consent, as notification is sufficient. So long as that notice is provided, recording of any conversation, even a private conversation, is permitted.

In addition, the legislature has over time amended the law to relax the notification requirement in contexts where recording is commonplace and would be expected. For example, as explained above, open recording without a notice is allowed in settings like public or semipublic meetings, including "hearings, trials, press conferences, public speeches, rallies and sporting or other events," as well as in classrooms or even private meetings "if all others involved knew or reasonably should have known that the recording was being made." Or. Rev. Stat. § 165.540(6)(a). These exceptions thereby permit recording when a specific warning is unnecessary to prevent unfair surprise. The law is thus narrowly tailored to serve its purpose.

For similar reasons, Or. Rev. Stat. § 165.540 also "leave[s] open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at

791. The law does not restrict a person from contacting and having conversations with anyone. The law does not prevent anyone who has a conversation from writing about or revealing the content of those conversations. Nor does it restrict anyone from recording those conversations, or the conversations of others. The *only* thing the law does is restrict a person from *secretly* recording conversations with notifying all the participants that there is a recording. The law thus leaves open any means of communication that does not involve secretly audio recording.

Plaintiffs suggest that secret recording is indispensable to the practice of investigative journalism in particular, and that Oregon's notice requirement effectively prevents that practice. But that is not the case, as this court has long recognized. *See Dietemann v. Time, Inc.*, 449 F.2d at 249 (9th Cir. 1971) ("We strongly disagree * * * that the hidden mechanical contrivances are 'indispensable tools' of newsgathering. Investigative reporting is an ancient art; its successful practice long antecedes the invention of miniature cameras and electronic devices."). *See also*, *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 239-40, 955 P.2d 469 (1998) ("The conduct of journalism does not depend, as a general matter, on the use of secret devices to record private conversations."). Investigative journalism does not depend on secretly recording conversations. To be sure, eavesdropping, wiretapping, or secretly

recording conversations all have the potential to uncover truthful and newsworthy information. For that matter, so does breaking into a person's home and stealing his files, or hacking into his computer. But merely because an investigative technique can lead to the discovery of newsworthy information obviously does not mean that it is indispensable to newsgathering, or that it is a practice that is shielded by the First Amendment regardless of the implications for individual privacy. "The right to speak and publish does not carry with it the unrestrained right to gather information," *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S. Ct. 1271, 14 L.Ed. 2d 179 (1965), the First Amendment "does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684, 92 S. Ct. 2646, 33 L.Ed. 2d 626 (1972). "Generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669, 111 S. Ct. 2513, 115 L.Ed. 2d 586 (1991). Oregon's notice requirement on recording is a reasonable and generally applicable restriction that leaves ample room for investigative journalism.

### 3. Plaintiffs' argument that the exceptions to Or. Rev. Stat. § 165.540(1)(c) render the law fatally underinclusive and overinclusive are without merit.

Plaintiffs contend that Or. Rev. Stat. § 165.540 is not narrowly tailored because the exceptions to the notice requirement that have been added to the law are both underinclusive and overinclusive. But their arguments in that regard are without merit.

Plaintiffs contend that the law is "underinclusive" in that it allows an exception to notice requirement when a person is openly recording a uniformed police officer in the line of duty but does not make any similar exception for openly recording other public officials without providing notice. Plaintiffs similarly note that the law allows for openly recording, without express notice, a congressional candidate without notice at a press conference, but requires giving notice before recording that same candidate talking on a crowded train. Plaintiffs argue that for the law to survive scrutiny, Oregon must "explain why limiting the recording of nearly all government officials, except the police, effectuates its interest in protecting conversational privacy better than eliminating all recording, or limiting recording to truly private areas." (App. Br. 47).

That argument fails, for several reasons. First, the exceptions on which plaintiffs rely are entirely consistent with the statute's purpose do render the

notice requirements underinclusive. They do not allow concealed recording in any circumstance; the merely allow for *open* recording without giving explicit notice, and only in certain circumstances where the people being openly recorded—a police officer on duty, or person at a public meeting—can and should expect that their conversations are likely to be recorded and where requiring separate notice would be impractical and unnecessary to achieve the law purpose. That is not "underinclusive"; on the contrary it is entirely consistent with the goal of protecting Oregonians from having their conversations unwittingly made the subject of audio recordings without their knowledge.

Second, plaintiffs' argument depends on an inaccurate understanding of the state's interest. Plaintiffs thus seem to be suggesting that the law is not narrowly tailored to protecting "conversational privacy" because the notice requirements apply even in a public place, like a crowded train, where there is no "conversational privacy" to be had. But that argument minimizes and misconstrues the nature of the particular privacy interests implicated by secretly recording a conversation. People regularly engage in conversations in parks, restaurants, trains and other public places. Even if the conversation happens in a public place, and even if it could potentially be overheard, the secret recording of the conversation constitutes a substantial invasion of privacy. The state's

interest is not in preventing private conversations from being recorded, but simply in having its citizens be aware when their conversations are being recorded. Oregon has a significant interest in protecting citizens from having their conversations being secretly recorded and assuring that citizens are aware of when they are being recorded, and the law is tailored to protect that interest.

In addition, plaintiffs' suggestion that Oregon's goal of preserving "conversational privacy" would be better served by prohibiting recording altogether or allowing it only in truly private areas makes no sense. To eliminate recording altogether or limit it to "truly private areas" would be grossly overinclusive, obviously unconstitutional, and not at all consistent with the laws purpose.

Furthermore, even if it were true that notice requirement could potentially reach public conversations in which the participants had no appreciable interest in knowing whether or not the conversation was being recorded, that would not mean the law is unconstitutional. Narrow tailoring need not be a perfect fit. It requires that the law not "burden substantially more speech than is necessary to further the government's legitimate interests", but "it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 799

Plaintiffs also identify two other facets of Or. Rev. Stat. § 165.540 that they say show that the law is underinclusive. The first of these is the fact although Or. Rev. Stat. § 165.540(1)(c) requires "all party" notice for recording a *face-to-face* conversations, Or. Rev. Stat. § 165.540(1)(a) allows a person to record his own *telephone* conversations without giving notice to the other party to the call, and generally requires only "one party" consent for recording telephone calls.[8] But the one party consent requirement for telephone calls, which was part of the law when it was first enacted in 1955, does not render all party notice requirement in Or. Rev. Stat. § 165.540(1)(c), which was added to the law in 1959, constitutionally suspect. As a threshold matter, that a policy may be underinclusive is immaterial because, under intermediate scrutiny, "governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 n.14 (1985). Content-neutral laws fail the First Amendment's narrow-tailoring requirement when they prohibit too much speech, not too little. Thus,

---

[8]     Or. Rev. Stat. § 165.540(1)(a) does not restrict recording one's own telephone calls and provides that a person may not "Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which the person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant."

the fact that the Oregon legislature chose to impose more restrictive "all party" notice requirements only for face-to-face conversations, not for telephone conversations, does not mean those restrictions are impermissible.[9] The 1959 legislature was entitled to make the judgment that heightened notice requirements for recording in-person conversations were appropriate and not unduly burdensome. [10]

Plaintiffs also contend Or. Rev. Stat. § 165.540 is underinclusive because under the so-called "homeowners exception," Or. Rev. Stat. § 165.540(3), people are allowed to obtain conversations (either telephonic or face-to-face) without notice to other participants.[11] But again, the legislature's policy

---

[9] Oregon could impose "all party" notice requirements for recording telephone calls as well, as many other states have done.

[10] When the legislature expanded Oregon's wiretap law in 1959 to also prohibit face-to-face conversations without notice to all participants, it also considered amending the one-party consent requirement for telephone communications to make it also an "all party" requirement. But it ultimately declined to do so, apparently out of concern over the effect an all-party notice rule could have on criminal investigations. *See Lissy*, 304 Or. at 465 (1987) (discussing the history). Expressing that concern, one witness provided the example of a police officer listening in on ransom calls in a kidnapping case as a reason why maintaining the one-party consent exception to the prohibition on listening to a telephone conversation was necessary. *Id.*

[11] The "homeowner" exemption was part of the wiretap law when it was first enacted in 1955. Or. Laws 1955, Ch 675, sec 2. When it was first enacted in 1955, however, the wiretap law applied only conduct aimed at intercepting telephone or radio communications, or tampering with equipment

*Footnote continued…*

judgment to relax notice requirements for recordings that a person makes within one's own home does not cast doubt on the purpose of the law or call the constitutionality of Or. Rev. Stat. § 165.540(1)(c) into question. It reflects a legislative balancing of the desire to protect privacy from being recorded with protecting the right of citizens to control what happens within the confines of their own homes. That is a quintessential policy exception that the legislature is entitled to make, and their decision does not cast doubt on the legitimate purpose of the notice requirement for recording in other contexts.[12]

In sum, plaintiffs' contention that the exceptions to the notice requirements render Or. Rev. Stat. § 165.540 impermissibly underinclusive or overinclusive are without merit. The exceptions are consistent with the goal of safeguarding privacy and ensuring that individuals fair notice when another person is recording them.

---

*(...continued)*
in an attempt to intercept such communications. *See State v. Evensen*, 298 Or App 294, 306, 447 P3d 23, 29 (2019), *rev den,* 366 Or 64 (2019) (describing history of "homeowner" exemption. t the subscription at issue would be to a telecommunication or radio service.

[12]    Plaintiffs also contend that "Oregon law goes so far as to include a much more limited restriction on bona fide eavesdropping with electronic devices as compared to the stark restrictions it places on the unannounced or secret recording of one's own conversations." (App. Br. at 41).  As the District Court correctly concluded, plaintiffs' contention is based on a misreading of Or. Rev. Stat. § 165.540. (ER-20–21).

**C.    Plaintiffs' substantial overbreadth challenge also fails.**

Plaintiffs also claim that Or. Rev. Stat. § 165.540 is unconstitutional because it is substantially overbroad. To prevail on that claim, however, plaintiffs bear the heavy burden of showing that the law punishes a substantial amount of protected speech in relation to the statute's plainly legitimate sweep. *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003) (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).  Plaintiffs cannot carry that burden. For the reasons already explained, the law is narrowly tailored and does not burden substantially more speech than necessary to serve the government's interest in safeguarding individual privacy.

In arguing to the contrary, plaintiffs concede that a prohibition on secret recordings can be permissible in a "few instances" such as "a hushed conversation in a secluded hallway," or "colleagues discussing confidential medical options in a hospital visitation room." (App. Br. 52).  But they contend that Oregon's notice requirement is unconstitutional as applied anywhere else, including in any public settings—parks, sidewalks, streets, etc— and they argue that Oregon's law impermissibly treats these "traditional public fora as if they were private and shield these areas from effective newsgathering." (App. Br. 53). In other words, plaintiffs contend once people walk outside or speak above a "hushed whisper,"  any interest in knowing whether one's conversation is

being recorded ceases to exist. Under that view, the First Amendment protects the right to secretly record any conversations save those which are manifestly intended to be secret. But the First Amendment does not begin to stretch so far. A law that merely ensures the participants in a recorded conversation are aware that the conversation is being recorded is constitutionally permissible, even to the extent it applies to conversations in public places.

Admittedly, there are some extraordinary circumstances in which the First Amendment would protect the right of a person to record a conversation occurring in public without giving notice. For example, courts have held that that laws which generally prohibit eavesdropping or secret recording violate the First Amendment when applied to the open recording of police officers who are on duty and in a public place. *See Alvarez*, 679 F.3d at 588 (7th Cir 2012) (Illinois eavesdropping law unconstitutional as applied to ACLU program of opening recording police officers on duty); *Glik v. Cunniffe*, 655 F.3d 78, 81-83 (1st Cir 2011) (First Amendment protects the right to record "government officials, including law enforcement officers, in the discharge of their duties in a public space," even when the recording is undertaken without the consent of the person recorded); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) ("[R]ecording police activity in public falls squarely within the First Amendment right of access to information."). More recently, in *Rollins*, the

First Circuit held that Massachusetts ban on secret recording was unconstitutional in so far as it applied "to bar the secret, nonconsensual audio recording of police officers discharging their official duties in public spaces." 982 F.2d at 826.

Or. Rev. Stat. § 165.540(1)(c) is generally consistent with those cases, because, as noted, it already contains an exception that allows for the recording of police in the line of duty. Or. Rev. Stat. § 165.540(5)(b). But even if it were true that there could be extraordinary circumstances which a notice requirement was unconstitutional and no exception applied, that would not show that the law is substantially overbroad and therefore unconstitutional on its face. An overbreadth challenge requires "a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications before applying the 'strong medicine' of overbreadth invalidation." *Id*. Plaintiffs have not carried their burden of showing that Or. Rev. Stat. § 165.540 infringes a substantial amount of protected speech relative to the scope of the law's plainly legitimate applications. Their substantial overbreadth claim therefore fails.

**D.** **Plaintiffs have not alleged a justiciable "as-applied" challenge to the notice requirements.**

In addition to claiming that Or. Rev. Stat. § 165.540 is unconstitutional on its face, plaintiffs also claim that the statute is unconstitutional "as applied"

to their organization. But plaintiffs have not alleged a ripe "as applied" challenge that is fit for adjudication.

Plaintiffs have not attempted to separate or delineate arguments as to why Or. Rev. Stat. § 165.540 is facially unconstitutional from arguments as to why the law is unconstitutional as applied to them. As a result, the precise contours of their "as applied" argument are not entirely clear. However, plaintiffs describe in their complaint the purpose of their organization as engaging in undercover newsgathering, and they describe various circumstances in which they wish to use secret recordings to engage in newsgathering. The state understands plaintiff to be asserting that the statute is unconstitutional "as applied" insofar as it prohibits that secret recordings in those circumstances and for those purposes. Notably, however, the remedy that plaintiffs sought is not limited to any particular circumstances or purposes. Plaintiffs seek a blanket declaration that the statute is unconstitutional as applied to Project Veritas and the Project Veritas Fund. (ER-103).

The circumstances here are nearly identical to those that the First Circuit recently confronted in *Rollins.* There, plaintiffs raised a similar challenge to the Massachusetts "all party" notice law. But the court concluded that the case was not ripe for review. While that decision is obviously not controlling on this Court, its reasoning is persuasive.

In *Rollins*, Project Veritas filed a complaint challenging Massachusetts law and alleging that, but for Massachusetts' law, they would use secret recordings to investigate issues including landlords taking advantage of housing shortages, sanctuary cities, and the motives and concerns of government officials regarding immigration and deportation, and protests and public events related to antifa. 982 F.3d at 823.

Project Veritas contended that the Massachusetts statute was unconstitutional insofar as it prohibits the secret, nonconsensual audio recording of any person who does not have a reasonable expectation of privacy in what is recorded. They also claimed that the statute was unconstitutional insofar as it prohibits the secret, nonconsensual audio recording of all government officials discharging their official duties in public spaces. *Id.*

In finding that those claims were not ripe for adjudication, the court noted that Project Veritas emphasized that its intent was to record "newsworthy" content, but it did not cabin its request for relief to such recordings. The court explained that, "The contrast between the narrowness of Project Veritas's plans and the breadth of the remedy that it has requested leads to the concern that it has not adequately shown that it intends to engage in much of the conduct covered by the relief it seeks." *Id.* at 843. The court also noted that "concern about adjudication of hypothetical rather than real disputes looms

even larger when one considers the ways in which the First Amendment analysis could be affected by the types of conversations that are targeted." *Id.* at 842. The court noted, by way of example, "It is hardly clear that a restriction on the recording of a mayor's speech in a public park gives rise to the same First Amendment concerns as a restriction on the recording of a grammar school teacher interacting with her students in that same locale while on a field trip or public works employees conversing while tending to a city park's grounds." *Id.* at 843. Based on those concerns, the court concluded that neither of plaintiffs' claims were ripe for review.

The same concerns are present here. In their complaint in this case, plaintiffs allege interests in investigating "corruption at the offices of the Oregon Public Records Advocate and the Public Records Advisory Council ... [and] the dramatic rise in violent protests in Portland." The topics and settings in which plaintiffs might record are nearly limitless, as plaintiff allege that "as they turn up new information," they would "investigate where stories take them and openly and secretly record other government officials and ordinary citizens throughout Oregon." (ER-96). The recordings plaintiffs would allegedly make are not sufficiently certain and well-defined to allow the Court to undertake a full as-applied analysis under the First Amendment.

The question in an as-applied challenge is whether the law "'impose[s] restrictions on speech that are disproportionate when measured against their corresponding privacy and speech-related benefits, taking into account the kind, the importance, and the extent of these benefits, as well as the need for the restrictions in order to secure those benefits.'" quoting *Bartnicki*, 532 U.S. at 536 (Breyer, J., concurring). But there is no way for that multi-factor test could be undertaken here without knowing the specific burdens on speech that enforcing the law in a particular instance would impose on plaintiffs or the burdens on privacy that enjoining its enforcement would impose on others. In advancing an "as applied" challenge, plaintiffs effectively asks this Court to ignore these gaps and "judge the outer bounds of the application of [its] decision without knowing the particular contours of the case or controversy," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 n.8 (9th Cir. 2000). *See also, Hoye v. City of Oakland*, 653 F.3d 835, 859 (9th Cir. 2011) (Federal courts "decline[] to entertain as-applied challenges that would require [the court] to speculate as to prospective facts.").

Just as in *Rollins*, the concern about adjudication of hypothetical rather than real disputes looms large here, given the ways in which the First Amendment analysis could be affected by the types of conversations that are targeted. Further, like here, those concerns are exacerbated given the particular

plans that plaintiffs describe and the relief it seeks. In this case, plaintiffs seek a blanket declaration that Or. Rev. Stat. § 165.540 is unconstitutional as applied to their organization, giving them special license to make secret recordings in any circumstance as they see fit. Plaintiffs are not entitled to that relief. Even if there might be circumstances in which plaintiffs have a constitutionally protected right to make surreptitious recordings as part of their "undercover newsgathering" operation, the existence of that constitutional right necessarily depends on the nature, scope, and circumstances of the conversation that plaintiffs wish to secretly record. But the specific facts needed to assess the constitutionality of a particular recording are not presented here. Like the claims in Rollins, plaintiffs' as-applied claims here are not ripe.

## CONCLUSION

This Court should affirm the District Court's judgment.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/ Michael A. Casper

MICHAEL A. CASPER #062000
Senior Assistant Attorney General
michael.casper@doj.state.or.us

Attorneys for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellees' Brief is proportionately spaced, has a typeface of 14 points or more and contains 10,480 words.

DATED:  September 12, 2022

/s/  Michael A. Casper
MICHAEL A. CASPER  #062000
Senior Assistant Attorney General
michael.casper@doj.state.or.us

Attorney for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
MICHAEL A. CASPER
Senior Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellees

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PROJECT VERITAS; PROJECT VERITAS ACTION FUND, | U.S.C.A. No. 22-35271 |
| Plaintiffs-Appellants, | |
| v. | STATEMENT OF RELATED CASES |
| MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney; ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General, | |
| Defendants-Appellees. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellees,

///

///

///

///

///

certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Michael A. Casper
MICHAEL A. CASPER  #062000
Senior Assistant Attorney General
michael.casper@doj.state.or.us

Attorneys for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt

# CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I directed the Appellees'

Brief to be electronically filed with the Clerk of the Court for the United States

Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

/s/  Michael A. Casper
MICHAEL A. CASPER  #062000
Senior Assistant Attorney General
michael.casper@doj.state.or.us

Attorney for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt