ELLEN F. ROSENBLUM
Attorney General



LISA UDLAND
Deputy Attorney General

# DEPARTMENT OF JUSTICE
## APPELLATE DIVISION

December 13, 2022

Molly C. Dwyer
Clerk of the Court
The James Browning Courthouse
95 7th Street
San Francisco, CA 94103

> RE:  **_Project Veritas, et al v. Michael Schmidt, et al_, Case No. 22-35271**
> Appellees' Letter Under FRAP 28(j)

Dear Ms. Dwyer:

During oral argument in the above-referenced case on December 7, 2022, I stated that I was not aware of any reported decision that interpreted and applied Or. Rev. Stat. § 165.540(5)(a), the "felony" exception to Oregon's all-party notice requirement.  Coincidentally, that same morning, the Oregon Court of Appeals published the first opinion in which it interpreted and applied that exception. _State of Oregon v. Copeland_, 323 Or. App. 1, ___ P.3d ___ (Or. Ct. App. 2022).  A copy of the opinion is attached to this letter under Fed. R. App. P. 28(j) and Circuit Rule 28-6.

Nothing in the _Copeland_ opinion casts doubt on the argument that appellees advanced before this court—namely, that the "felony" exception to Oregon's all-party notice requirement does not depend on the content of any conversation but rather depends on the temporal relationship between the conversation and the felony that endangers human life.  Indeed, the court held that the exception applied to "a person who records 'during' a felony that endangers human life." _Copeland_, 323 Or. App. at 8.  Thus, "[b]ecause the victim recorded a 'conversation during a felony that endangered human life,' the victim did not violate ORS 165.540(1), and the recording is not subject to exclusion under ORS 41.910." _Id._

///

///

FRAP 28(j) Letter
December 13, 2022
Page 2

Respectfully submitted,

ELLEN F. ROSENBLUM  #753239
Attorney General
BENJAMIN GUTMAN  #160599
Solicitor General

/s/  Philip Thoennes

PHILIP M. THOENNES  #154355
Assistant Attorney General
philip.thoennes@doj.state.or.us

Attorney for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS WILLIAM COPELAND,
*Defendant-Appellant.*

Lane County Circuit Court
18CR66765; A173283

Charles M. Zennaché, Judge.

Submitted September 14, 2022.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

State v. Copeland

**EGAN, J.**

Defendant challenges his convictions, after a jury trial, for one count of murder in the second degree with a firearm, ORS 163.115, (Count 1); one count of unlawful possession of a weapon with a firearm, ORS 166.220, (Count 2); and two counts of unlawful possession of a firearm, ORS 166.250, (Counts 3 and 4). Defendant did not dispute at trial that he shot the victim, but he contended that he acted in self-defense. In his first assignment, defendant contends that the trial court committed legal error in denying his pretrial motion to exclude from evidence a one-minute video of the shooting taken by the victim from his body-camera, which he asserts the victim recorded in violation of ORS 165.450 and was therefore inadmissible under ORS 41.910. In the second assignment, defendant contends that the trial court abused its discretion in denying his motion for a postponement of trial so that defense counsel could review recordings of telephone calls that defendant made from the jail. We hold that the trial court did not err in denying defendant's motion to exclude the body-camera recording and did not abuse its discretion in denying defendant's motion for a postponement. Accordingly, we affirm defendant's convictions.

We address first defendant's challenge in his first assignment of error to the trial court's denial of his pretrial motion to exclude from evidence the recording of the shooting from the victim's body camera. The admissibility of the evidence presents a legal question of statutory construction that we review for legal error. *Tri-Met v. Posh Ventures, LLC*, 244 Or App 425, 435, 621 P3d 33 (2011) (citing *State ex rel Carlile v. Frost*, 326 Or 607, 617, 956 P2d 202 (1998) (when question is whether a statute precludes the admission of certain evidence, the trial court's evidentiary ruling presents a question of statutory construction that is reviewed for legal error).

The background facts related to the issues on appeal are largely undisputed. The victim was working as a private security guard in the parking lot of a restaurant and wore a body camera. Defendant and three friends, Clumpke, Jenkins, and Tiffany, came out of the restaurant at about midnight and went to Tiffany's car to smoke marijuana. The

victim, in his vehicle, pulled up behind Tiffany's car, stopped briefly, and then drove to the other side of the parking lot, where the victim got out of the car and stood by the open driver's side door. Defendant, Tiffany, and Jenkins then walked toward the victim. Without informing defendant, the victim turned on his body camera as they approached.[1]

It is undisputed that defendant and the victim stood close together and engaged in a heated discussion concerning the victim's authority to ask them to leave the parking lot. At some point, defendant drew a gun and pointed it at the victim, and the victim pepper-sprayed in the direction of defendant and his friends. Defendant fired six shots at the victim, killing him.

Defendant was charged with the victim's murder. He testified at trial that he shot the victim to protect the two women, because he believed the victim was drawing his gun.

As relevant here, ORS 165.540(1) defines as a misdemeanor the recording of a conversation without notifying the participants:

---

[1] On the disputed video, the victim is heard telling defendant, Jenkins, and Tiffany, "Just stand back. Stand back." Defendant is heard telling the victim, "Don't tell me what to do." Jenkins ran between defendant and the victim and asked the victim whether he had seen her cartwheel. Defendant then asked the victim, "Who do you think you are?" The victim responded that he was security for the property. Defendant said, "Well guess what, you're security, not police." Tiffany stepped between the victim and her friends, directly in front of the victim and his body camera, saying "Everyone calm down. Hey, we just paid a hundred-dollar tab at the bar [gesturing behind her and to her left]. We are leaving in two seconds." At the same time, the victim can be heard saying, "Back off. Just leave." Defendant next stepped forward between Tiffany and the victim saying, "You leave. You leave." Tiffany said, "Yes, sir. We are going." Jenkins moved between the security guard and defendant, facing defendant as defendant continued to escalate. Jenkins said "No, no, no, we're going." Tiffany can be seen lifting Jenkins's backpack, which was strapped over the other woman's left shoulder. The victim asked, "Do you want to go to jail?" Jenkins and Tiffany temporarily block the body camera view of defendant but, as he came back into the image, defendant clearly displayed a semi-automatic pistol and he can be heard saying, "You see this? You see what this is?"

There is evidence that, after that, the victim sprayed pepper-spray. The video then contains two inaudible statements from the victim, after which gun shots are heard. Defendant testified that, believing the victim was reaching for his gun, defendant fired his weapon six times. The victim fell to the ground and, as defendant, Jenkins, and Tiffany left the scene, defendant is heard saying, "fuck you dude."

"(1)   Except as otherwise provided in \*\*\* subsections (2) to (7) of this section, a person may not:

"\* \* \* \* \*

"(c)   Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."

ORS 165.540(5) provides an exception to that prohibition for "[a] person who records a conversation during a felony that endangers human life[.]" ORS 165.540(5)(a).

The state sought to introduce the video and audio recording of the shooting taken by the victim on his body camera. Defendant sought to exclude the evidence, on the ground that the victim had not notified him that he was being recorded, in violation of ORS 165.540(1)(c). *See* ORS 41.910(1) (providing that evidence of the contents of any oral communication intercepted "[i]n violation of ORS 165.540 shall not be admissible in any court of this state").

The state asserted that the victim's recording was not obtained in violation of ORS 165.540(1)(c), because it was subject to the exception stated in ORS 165.540(5)(a), for "[a] person who records a conversation during a felony that endangers human life." Defendant argued that the exception applies only in the context of exigent circumstances, to allow a person to record what the person believes to be a felony in progress without the required notice. In response to defendant's contention that the exception did not apply because the victim had not *initiated* the recording during the felony, the state argued that the exception encompassed not only the recording of the exact moment of the *actus rea* of the felony—the shooting—but the minutes before defendant had fired the shots, as relevant to defendant's state of mind (and to defendant's claim of self-defense).

The trial court admitted the body-camera footage, reasoning that ORS 165.540(5)(a) creates an exception to the misdemeanor offense for "the person" who makes the

State v. Copeland

recording that captures a felony.[2] The court reasoned that the victim's act of recording fell within the exception, *i.e.*, did not violate the statute, because the recording had captured a felony that endangered human life. Thus, the court concluded that the recording was admissible.[3] Defendant was convicted after a jury trial in which the state played the disputed body-camera footage.

In his first assignment of error, defendant challenges the trial court's denial of his motion to exclude the body-camera footage. Defendant argues that the victim's recording did not fit within the exception of ORS 165.540(5)(a), because, at the time the recording was initiated, no felony that endangered human life was taking place. If, defendant contends, at its inception, the victim's recording of the conversation between defendant and the victim constituted a misdemeanor, because no notice of the recording had been given, then defendant's subsequent conduct in shooting the victim could not cause the victim's unlawful act of making the recording to fall within the exception of ORS 165.540(5)(a), and therefore become "legal."

The state responds that the recording of a felony endangering human life is within the exception of ORS 165.540(5)(a), whether or not the felony was occurring at time the recording was initiated. The state further contends that the moments leading up to the shooting demonstrate defendant's culpable mental state and are therefore part of the felony.

The dispute turns on a question of statutory construction. As noted, ORS 165.540 is a criminal statute, setting forth a misdemeanor offense. If the offense occurred, ORS 40.910 establishes an exclusionary rule for the unlawfully obtained recording. Thus, the first question of statutory

---

[2] The court explained:

"[ORS] 41.910 says if you violate that statute, *** [ORS] 165.540, then you can't use it in court, so the recording made by the person, i.e. [the victim], to the extent it captured the commission of a felony, which I think does include the mens rea portion of it, is not subject to the rule of exclusion [of ORS] 41.910, and therefore I think that at least a portion of this, if not all of it, *** is admissible."

[3] The trial court also admitted the restaurant's security camera footage, and defendant does not challenge that ruling.

construction here is whether the offense occurred. In this case, that depends on whether the legislature intended the exception to criminal liability set forth in ORS 165.540(5)(a) to apply only when the person has initiated the recording during the felony itself, or whether the exception arises if the person's recording captured a felony but was initiated before the felony began. We take up the construction of the statute under the familiar template of *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), examining first the statute's text in its context, and any relevant legislative history.

The text of ORS 165.540(5)(a) provides that the prohibition stated in subsection (1)(c) of ORS 165.540 does not apply to "[a] person who records a conversation during a felony that endangers human life[.]" It is not disputed that, if defendant shot the victim with the requisite "intentional" mental state, *see* ORS 163.115 (defining murder in the second degree), the act constituted a felony, which the victim captured on his body camera. Because the requisite intentional mental state is an element of the offense, the state's argument is that any portion of the recording that had bearing on defendant's mental state (or his asserted defense of self-defense) would be relevant to determining whether his conduct constituted a felony.

But defendant does not contend that only certain portions of the recording are admissible. Defendant contends that no part of the recording is admissible, because the victim did not begin recording during a felony. The question thus is not whether or what portion of the recording is relevant to establishing defendant's mental state for purposes of determining whether defendant committed a felony; the disputed issue is only whether the victim's act of recording violated ORS 165.540(1), so as to make the entire recording subject to exclusion under ORS 41.910. As the trial court correctly observed, the exception for recording "during a felony that endangers human life" applies to the person who makes the recording. In defendant's view, the person must have initiated the recording during the commission of the felony itself for the exception to apply.

The difficulty with defendant's construction of the statute is that the statute does not place any limitation on when the person must have initiated the recording. It simply excepts from the offense a person who records "during" a felony that endangers human life. "During" is defined as "1: throughout the continuance or course of \*\*\* 2: at some point in the course of \*\*\*." *Webster's Third New Int'l Dictionary* 703 (unabridged ed 2002). Based on those definitions and the undisputed facts, we conclude that the victim's body camera recorded "during a felony that endangers human life." It makes no difference that the victim also recorded a conversation that did not constitute a felony. Because the victim recorded a "conversation during a felony that endangered human life," the victim did not violate ORS 165.540(1), and the recording is not subject to exclusion under ORS 41.910.

Defendant contends that the legislative history of ORS 165.540(5)(a) shows that the legislature intended the exception for the recording of a felony that endangers human life to apply only when the recording is initiated during the offense itself, as a type of exigent circumstance. We have reviewed the legislative history, and it neither supports nor detracts from defendant's construction, because it does not explicitly address it.

It is true, as defendant contends, that there is a general comment in the legislative testimony during hearings preceding the enactment of ORS 165.540 by Oregon Laws 1989, chapter 1078, section 1, that the exceptions to liability in ORS 165.540 are intended to follow the "well-established legal principle of exigent circumstances." Testimony, House Committee on Judiciary, HB 2252, Jan 13, 1989, Ex L (written testimony of Lieutenant Vic Mann of the Eugene Department of Public Safety). Defendant draws from that testimony the legislative intention that the exception stated in ORS 165.540(5)(a) for the recording of a felony that endangers human life must only apply in the context of an emergency—when an exigency prevents the person recording the felony from informing the person being recorded that they are being recorded.

But as we have explained, the statute's text, which controls, places no limitation on when the person initiates

the recording of a felony that endangers human life. We therefore conclude that no such limitation was intended and that the victim's body-camera recording did not violate ORS 165.540. *See Gaines*, 346 Or at 173 ("When the text of a statute is truly capable of only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different."). The trial court therefore did not err in denying defendant's motion to suppress.

We move on to consideration of defendant's second assignment of error. At a hearing four weeks before the scheduled trial, the prosecutor advised the trial court and defense counsel that it had just come into possession of recordings, made by Telmate, LLC, a contractor for the Lane County Sheriff's Department, of approximately 180 hours of defendant's telephone calls from the jail. The prosecutor was not sure at that point what portion of the recordings, if any, it would offer at trial but promised that it would provide defendant with the recordings by the end of the week. Ten days before trial, defendant's counsel said that he had not yet had time to listen to all of the recordings, and he asked for a three-week postponement of trial to review them.

The court was not sympathetic to defendant's claim that he had not had a reasonable opportunity to review the telephone recordings. The court noted that the recordings were of defendant's own telephone conversations, some of which were with persons who had been present on the night of the shooting; that defendant knew that his conversations at the jail were being recorded. The court also considered that the case had been pending for over a year with defendant in custody, that defendant had previously obtained a lengthy postponement, and that the requested postponement would delay the trial by at least six weeks, including the time to summon a jury.[4] For all those reasons, the court denied defendant's motion for postponement.

---

[4] The court also rejected defendant's contentions that the prosecutor had committed a discovery or *Brady* violation, *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), in failing to share the recordings of defendant's telephone conversation from the jail with defendant as they were made by Telmate; those rulings are not challenged on appeal.

In his second assignment, defendant contends that the trial court abused its discretion in denying his motion. *See State v. Wolfer*, 241 Or 15, 17, 403 P2d 715 (1965) (A motion for continuance is addressed to the sound discretion of the trial court and its ruling thereon will be disturbed upon appeal only for an abuse of that discretion.); *State v. Powell*, 322 Or App 37, 44, 518 P3d 949 (2022) (same). We have reviewed the record and conclude that the circumstances cited by the trial court show that the court's denial of defendant's motion was within the range of the court's discretion.

Affirmed.

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2022, I directed the FRAP 28(j) Letter to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Philip Thoennes
_____
PHILIP M. THOENNES  #154355
Assistant Attorney General
philip.thoennes@doj.state.or.us

Attorney for Defendants-Appellees
Ellen Rosenblum and Michael Schmidt