Appeal No. 22-35271

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

PROJECT VERITAS; PROJECT VERITAS ACTION
FUND,

Plaintiffs-Appellants,

v.

MICHAEL SCHMIDT, in his official capacity
as Multnomah County District Attorney;
ELLEN ROSENBLUM, in her official capacity
as Oregon Attorney General,

Defendants-Appellees

_____

On Appeal from the United States District Court
for the District of Oregon (Hon. Michael Mosman)
No. 3:20-cv-01435-MO

_____

BRIEF OF AMICUS CURIAE BERT P. KRAGES II
IN OPPOSITION TO THE PETITION FOR REHEARING

Bert P. Krages II
Attorney at Law
6665 S.W. Hampton Street, Suite 200
Portland, OR 97223
(503)597-2525
bert@krages.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF AMICUS CURIAE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.   Or. Rev. Stat. § 165.540(1)(c) is overbroad because (1) it encompasses
        speech in which the speaker has no reasonable expectation of privacy and
        (2) it requires that all participants, even silent listeners, be informed that the
        conversation is being recorded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.   Or. Rev. Stat. § 165.540(1)(c) impairs the ability of persons to record a
        broad range of conversations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A. Hate Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B. Criminal Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C. Child and Elder Abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D. Extraneous, Spontaneous, and Incidental Oral Communications . . . . 14

      E. Family and Similar Personal Events . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

CASES

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz,*
  31 F.Supp.3d 237 (D. D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Longoria ex rel. All Statutory Beneficiaries Longoria v. Pinal Cnty.,*
  873 F.3d 699 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Peavy v. Harman,*
  37 F.Supp.2d 495 (N.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Price v. Turner,*
  260 F.3d 1144 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State v. Bichsel,*
  790 P.2d 1142 (Or. Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State v. Delaurent,*
  514 P.3d 113 (Or. Ct. App. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*State v. Haase,*
  895 P.2d 813 (Or. Ct. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State v. Jones,*
  121 P.3d 657 (Or. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Knobel,*
  777 P.2d 985 (Or. Ct. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*State v. Neff,*
  265 P.3d 62 (Or. Ct. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*State v. Prew,*
  161 P.3d 323 (Or. Ct. App.  2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Hansen,*
  599 U.S. 762 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Stevens*,
  559 U.S. 460 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 17

STATUTES

  18 U.S.C. § 2510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4–7, 12

  18 U.S.C. §§ 2510–2523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

  Or. Rev. Stat. §§ 124.060–.071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

  Or. Rev. Stat. § 133.721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5–7

  Or. Rev. Stat. § 153.058 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

  Or. Rev. Stat. §§ 161.095–.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

  Or. Rev. Stat. § 161.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

  Or. Rev. Stat. § 163.195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

  Or. Rev. Stat. § 165.535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

  Or. Rev. Stat. § 165.540 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2–17

  Or. Rev. Stat. § 165.543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

  Or. Rev. Stat. §§ 419B.005–.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

  Or. Rev. Stat. §§ 830.305 & .990 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

RULES

  FRAP 29(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

  Circuit Rule 29-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

INTEREST OF AMICUS CURIAE

I am a citizen of Oregon, an attorney, and a person who makes videos pertaining to a matter of public interest in Oregon. Beginning in 2020, I became active in efforts to adopt laws that would limit the damage caused by wakesurfing on the Willamette River.[1] My participation has included submitting comments to the Oregon State Marine Board, testifying before the Oregon State Legislature, and enforcing rules and statutes regulating wakesurfing in Oregon courts pursuant to Oregon's citizen enforcement statute (Or. Rev. Stat. § 153.058).

A significant obstacle to such advocacy is that persons in a position to address this issue often disbelieve accounts about wakesurfing if they are unable to see and hear what it is like. To support the advocacy efforts of myself and others, I have made and continue to make videos that aurally and visually depict the problems caused by wakesurfing. These videos are posted on my YouTube channel and have been viewed by numerous legislators, members of the Oregon State Marine Board, and other persons interested in wakesurfing issues. I have also used videos as evidence against violators of boating laws in proceedings I have commenced pursuant to Or. Rev. Stat. § 153.058.

---

[1] Wakesurfing consists of a person on a board riding on the wake of the boat. The boats used for wakesurfing are specially designed to generate large artificial waves, which can be deleterious to shorelines, shoreline property, and other boaters.

1

I record much of my video from public places such as parks and waterways. It is impossible to make the kind of recordings that I use in my videos without encountering conversations that are extraneous to the subject matter I am trying to record. I am affected by the statute because it is generally impossible to comply with its notification requirement under the circumstances in which I and many other people record video. For example, I was once taking video on one side of the Willamette River when an unseen person on the other side began using a bullhorn to communicate to unseen listeners. I had no means by which to inform the speaker or the listeners that the conversation would be recorded.

This brief is being submitted pursuant to FRAP 29(2) and Circuit Rule 29-2(a). Plaintiffs-Appellants and Defendants-Appellees have consented to this filing. No party or their counsel authored any part of this brief or made any monetary contribution toward its preparation or submission, and no person other than myself has contributed money intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Petitioners focus on secret recordings and do not address how Or. Rev. Stat. § 165.540(1)(c) extends to other contexts. The scope of subsection (1)(c) is not limited to secret recordings, or even to face-to-face conversations. What makes the subsection unreasonably broad is that it encompasses the majority of conversations in which the participants have no reasonable expectation of privacy. Furthermore,

2

its requirement that all participants to a conversation be specifically informed of the recording is unnecessarily burdensome because the person making the recording must inform the silent listeners to a conversation as well as those who speak.

The notification requirement also imposes an unreasonable burden on expression because in many cases it is impractical, impossible, or even imprudent to provide such notifications. When in public spaces, it is often impossible and sometimes ill-advised to comply with Or. Rev. Stat. § 165.540(1)(c) when recording content such as hate speech, criminal activity, child abuse, or even mundane commonplace activities because: (1) the statute contains no generally-applicable exception for recordings in which the speakers have no reasonable expectation of privacy and (2) it is not always possible to specifically inform all the participants when in public spaces. Furthermore, the statute implicitly obligates persons to refrain from or cease recording whenever extraneous conversations intrude on a recording. This makes it very difficult to record in public settings where a multitude of conversations are taking place.

## ARGUMENT

**I. Or. Rev. Stat. § 165.540(1)(c) is overbroad because: (1) it encompasses speech in which the speaker has no reasonable expectation of privacy and (2) it requires that all participants, even silent listeners, be informed that the conversation is being recorded.**

The first step in evaluating whether a statute is overbroad is to determine what

it covers. *United States v. Hansen*, 599 U.S. 762, 770 (2023). The breadth of Or. Rev. Stat. § 165.540(1)(c) is determined by its three clauses, which make it a crime for a person to:

1. [o]btain or attempt to obtain the whole or any part of a conversation,

2. by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise,

3. if not all participants in the conversation are specifically informed that their conversation is being obtained.

There is nothing in the subsection that limits its reach to secret recordings. As such, its scope is far broader than what is necessary to serve the State's asserted interest in protecting persons from the recording of private speech. Also, the possibility that prosecutorial discretion will be exercised is not grounds for holding an overbroad statute to be constitutional. *United States v. Stevens*, 559 U.S. 460, 480 (2010)("But the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").[2]

---

[2] Subsection (1)(c) has a history of being directed against persons who have drawn the ire of persons in positions to commence prosecutions. *E.g.*, *State v. Delaurent*, 514 P.3d 113 (Or. Ct. App. 2022)(recording of deputy district attorney); *State v. Neff*, 265 P.3d 62 (Or. Ct. App. 2011)(recording of municipal police officer); *State v. Prew*, 161 P.3d 323 (Or. Ct. App. 2007)(recording of state trooper); *State v. Knobel*, 777 P.2d 985 (Or. Ct. App. 1989)(recording of sheriff's

Subsection (1)(c) encompasses an array of speech that is considerably broader than the analogous provisions in the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510–2523, and the recording statutes of most other states. The primary reasons are: (1) the subsection contains no generally-applicable exception for conversations in which the speaker has no reasonable expectation of privacy and (2) the statute requires that all participants to a conversation be notified that the conversation will be recorded, even if those participants will not be speaking.

The first clause of Or. Rev. Stat. § 165.540(1)(c) contains the operative term "conversation," which is defined at Or. Rev. Stat. § 165.535(1) as "the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication . . . ." Unlike the Oregon eavesdropping statute, the term "oral communication" is not defined for the purposes of Or. Rev. Stat. § 165.540.[3] *State v. Jones*, 121 P.3d 657, 660 (Or. 2005)(the definitions

_____

deputy).

[3] Or. Rev. Stat. § 165.543(2) incorporates the definition of "oral communication" in Or. Rev. Stat. § 133.721(7), which defines the term to mean:

(a) Any oral communication, other than a wire or electronic communication, uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation; or
(b) An utterance by a person who is participating in a wire or electronic

set out in Or. Rev. Stat. § 133.721 are inapplicable to Or. Rev. Stat. § 165.540). Thus, the term "conversation" is not limited to those communications in which the speaker has a reasonable expectation that the communications will not be subject to interception. Similarly, subsection (1)(c) does not incorporate the limitation in the definition of "oral communication" used in the ECPA, which likewise contains the "not subject to interception" limitation found in Or. Rev. Stat. § 133.721. 18 U.S.C. § 2510(2). *See also*, *Price v. Turner*, 260 F.3d 1144, 1148–49 (9th Cir. 2001)(the ECPA embraces only those communications in which the communicators subjectively believe their conversation will remain private and in which such belief is objectively reasonable). Unless one of the exceptions in Or. Rev. Stat. § 165.540 applies, subsection (1)(c) encompasses conversations in which the participants have no reasonable expectation of privacy. *State v. Knobel*, 777 P.2d 985, 988 n.1 (Or. Ct. App. 1989) ("[Section] 165.540(1)(c) includes no language indicating that a reasonable expectation of privacy is required").

The term "participant" in subsection (1)(c) is not defined but the definition of "conversation" as the transmission between two or more persons of an oral communication indicates that the intended recipients of an oral communication

---

communication, if the utterance is audible to another person who, at the time the wire or electronic communication occurs, is in the immediate presence of the person participating in the communication."

constitute "participants" regardless of whether they speak. This interpretation is supported by cases interpreting the ECPA. *E.g.*, *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz,* 31 F.Supp.3d 237, 255 (D. D.C. 2014)("a person whose presence is apparent in the midst of a communication is considered a party, whether or not that person actually participates verbally in the communication"). The use of the term "participant" in the statute means that the person recording a conversation must not only inform the speakers, but must also inform the listeners.

Thus, the notification requirement of Or. Rev. Stat. § 165.540(1)(c) imposes an unreasonable burden on persons who wish to record in places where conversations occur because: (1) the subsection requires that all participants to a conversation be informed of the recording, even if those participants do not intend to speak; (2) it is often impossible to anticipate when an unexpected conversation might commence when one is in the process of recording; and (3) it is often impossible to discern and notify all the participants to a conversation. This burden is made even greater by the fact that the notification requirement is an explicit one, as Oregon courts have held that the notification requirement is not met when a party to a conversation, although not warned, "reasonably should have known that [a] recording was being made." *State v. Haase*, 895 P.2d 813, 815 (Or. Ct. App. 1995). Instead, the statute requires that each participant receive a warning that reasonably imparts information that the conversation is being recorded. *Id*.

7

Or. Rev. Stat. § 165.540(1)(c) makes no allowance for situations in which an extraneous conversation, even an unwanted one, intrudes into a recording in progress. Although Oregon law would require at least criminal negligence for a person to be convicted of violating subsection (1)(c), Or. Rev. Stat. §§ 161.095–.115, and a person making an audio recording would not necessarily be guilty if an unanticipated conversation were to take place while recording something else, the statute nonetheless imposes the implicit obligation to either cease recording or to specifically inform the participants that the conversation is being recorded if the person wishes to continue recording.

Subsection (1)(c) likewise does not provide an exception for situations in which it is impossible or impracticable to identify and notify all the participants to a conversation. Such situations include settings in which the person making the recording cannot determine which participant or participants are receiving the oral communication and in situations in which a notification cannot be provided to each participant by reason of distance, dispersal, or obstructions.

## II. Or. Rev. Stat. § 165.540(1)(c) impairs the ability of persons to record a broad range of conversations.

Petitioners, in expressing concern about the State's interest in "protecting the privacy of communication among its residents and ensuring that their speech will not be co-opted without their knowledge," disregard that Oregon residents often

have compelling reasons to record the speech of others and that it can be infeasi-

ble, even imprudent at times, to inform persons that they are being recorded.

Examples of subject matter in which it is often cumbersome, impossible, or

imprudent to comply with the notification requirement are discussed below.

**A. Hate Speech.**

Hate speech, even in its most virulent forms, is not a crime in Oregon although

Or. Rev. Stat. § 165.540(1)(c) makes recording it illegal if the perpetrators and the

victims are not specifically informed that the "conversation" is being recorded.

That the public has an interest in being informed about incidents of hate speech is

indisputable considering the extensive coverage given to such incidents by

television news operations and uploads to video platforms such as YouTube.

A notable example of hate speech recorded in violation of Or. Rev. Stat. §

165.540(1)(c) was made by a young woman who witnessed a man named Jeremy

Christian ranting against Christians, Muslims, and Jews to passengers while riding

on a MAX train in Portland, Oregon on May 25, 2017.

> *Video before fatal MAX stabbings shows Jeremy Christian talking about stabbing people.*
> https://www.youtube.com/watch?v=rvddongQHQo

The following day, Mr. Christian was riding on another MAX train when he

directed his hate speech at two adolescent girls. After a bystander informed Mr.

Christian that he was being recorded, an altercation between Mr. Christian and

9

three other passengers ensued, during which he stabbed each of the three in the neck, killing two of them.[4] However, instead of prosecuting the young woman who had recorded Mr. Christian the day before the stabbings, the State used her video as an exhibit when it put Mr. Christian on trial for murder.

By its terms, Or. Rev. Stat. § 165.540(1)(c) prohibits the recording of hate speech without informing all the participants, despite the fact that the act of informing the speaker that the conversation is being recorded runs the risk of escalating already tense encounters. The public interest in allowing such record-ings to be made lawfully is evidenced by the use of such videos by law enforce-ment agencies in Oregon to investigate incidents involving hate speech.[5] The petitioners fail to explain in their brief why they believe the State has a compelling interest in protecting the privacy of persons who direct hate speech at its most vulnerable residents. Rather, and contrary to upholding the State's "significant interest in protecting the privacy of communication," the State has a history of

---

[4] *E.g.*, Appellant's Redacted Amended Opening Brief and Excerpt of Record at 109, *State v. Jeremy Joseph Christian*, No. A175029 (Or. Ct. App. filed April 14, 2023)("Those statements likely caused TM to provoke defendant by recording him while telling defendant that he was going to be an Internet sensation.").

[5] *E.g.*, *Springfield family fall victim to racist tirade on Easter.*
https://www.youtube.com/watch?v=oiHPoNsGtoI&t=1s

*Hate speech directed at roofers brings arrest.*
https://www.youtube.com/watch?v=2c3pHsvYqyw

actively used recordings of hate speech to investigate and prosecute speakers for crimes committed in conjunction with their hate-infused rants.

## B. Criminal Conduct.

Contrary to its claim that the exception for recording felonies that endanger human life at Or. Rev. Stat. § 165.540(5)(a) is not a restriction on content, the statute permits the recording of conversations during some crimes without informing the participants but prohibits such recordings of other crimes. For example, one can lawfully record a victim begging a murderer to not to kill her but cannot lawfully record a man kicking his dog to death in front of children begging him to stop, unless all the children and the man are informed that they are being recorded. Similarly, the statute prohibits the recording of conversations during misdemeanors that endanger human life unless all the participants are informed. Thus, one cannot lawfully record a boat racing through a swimming area crowded with children without first informing the boater, the screaming parents, and the terrified children, because the statutes that prohibit recklessly endangering another person and recklessly operating a boat "in a manner that endangers the safety of persons" are misdemeanors. Or. Rev. Stat. §§ 163.195, 830.305 & 830.990.

A good example of how Or. Rev. Stat. § 165.540(1)(c) unreasonably impairs the ability of law-abiding residents to make lawful recordings for the purpose of protecting persons and property can be seen in the video linked below.

11

*Caught on camera: Man caught stealing catalytic converter in broad daylight.*
https://www.youtube.com/watch?v=wkQgYoGM-uI

Note that there are two separate conversations in the video. The first is between the man recording the video and the thief and the second is between the man and a woman named Carrie, whom he asks to summon the police. However, the man fails to specifically inform either the thief or the woman that the conversations are being recorded. The thief in the video likely would prefer that his less-than-credible explanation of his activities not be recorded, and the woman who is asked to summon law enforcement likely does not care that the man recorded his request. Nonetheless, both recordings are unlawful under Or. Rev. Stat. § 165.540(1)(c).

Not only does the statute permit the recording of some crimes to the exclusion of others, it puts persons who wish to record criminal activity in which the safety of persons is endangered in a difficult position because it is often unclear whether a situation will escalate into a felony that endangers human life.[6] The young woman who failed to inform Jeremy Christian that he was being recorded could not avail herself to the "felony that endangers human life" exception because he

---

[6] Even when the recording of criminal conduct would preserve information that will facilitate the investigation of a crime, Oregon law will generally not excuse a violation of subsection (1)(c) because the defense of necessity will rarely, if ever, apply to unlawful recordings. *See* Or. Rev. Stat. § 161.200. *See also*, *Peavy v. Harman*, 37 F.Supp.2d 495, 518 (N.D. Tex. 1999)(describing necessity defense in context of the ECPA).

refrained from stabbing people that day. The persons who recorded Jeremy Christian the next day, had he had not been informed that he was being recorded, would have fortuitously received the benefit of that exception because Mr. Christian decided to kill people that day.

## C. Child and Elder Abuse.

The statute also imposes an unreasonable restriction on recording instances of abusive or otherwise inappropriate conduct against children and the elderly, especially when such recordings are made by members of marginalized communities who have historically lacked credibility when reporting abuse. For example, the video in the link below was secretly made by a Spanish-speaking undocumented mother in Florida, who recorded a school principal beating her six year-old daughter with a paddle.

*Disturbing Video Of Elementary School Principal Paddling Student*.
https://www.youtube.com/watch?v=bnPyP6KJITE

The recording graphically shows a situation in which the mother likely would have been disbelieved without the benefit of the video when she described the intensity of the beating and the beratement that her child received. *See also*, *Longoria ex rel. All Statutory Beneficiaries Longoria v. Pinal Cnty.*, 873 F.3d 699, 706 (9th Cir. 2017)(discussing the relevance of video evidence regarding the reasonableness of a defendant's actions and the credibility of his justification of his conduct).

13

It is also likely that the woman would have made the situation worse had she told the principal she was being recorded.

Oregon has a strong interest in curtailing child and elder abuse. For instance, it requires by law that members of a multitude of professions report child and elder abuse to law enforcement or the Oregon Department of Human Services and mandates that state agencies act timely upon such reports. Or. Rev. Stat. §§ 124.060–.071, 419B.005–.020. The ability to make lawful recordings of acts of abuse without having to inform the abuser and the abused is important to persons who want to go beyond the minimum reporting requirements mandated by law and maximize the chances that an abused person will be protected. The State has no compelling interest in prohibiting recordings in this context, especially when such recordings may lead to the protection of its most vulnerable residents.

## D. Extraneous, Spontaneous, and Incidental Oral Communications.

One of the most substantial impositions of subsection (1)(c) on the freedom of expression is that it imposes the notification requirement when extraneous, incidental, and typically mundane conversations are recorded in public spaces where the speakers have no expectation of privacy. Not only does Or. Rev. Stat. § 165.540 contain no general exception for newsworthy events, Oregon courts have given short shrift to arguments that the statute unduly burdens the gathering of news. *See State v. Knobel*, 777 P.2d 985, 988–89 (Or. Ct. App. 1989) (holding that

14

Or. Rev. Stat. § 165.540(1)(c) does not place an impermissible burden on the press). Nonetheless, video with audio content is essential to communicating about events that take place in public spaces. As the video linked below demonstrates, there is a substantial difference between video with and without ambient sound.

*Donald Trump supporters clash with BLM protesters in Portland.*
https://www.youtube.com/watch?v=PRqLm_2U5rk

It is often impossible to comply with the notification requirement of subsection (1)(c) in public spaces such as malls, parks, and airports because of the numerous scattered and ephemeral conversations that occur in these locations. For example, the video linked below of a person walking about in a downtown Portland mall picks ups dozens, if not hundreds, parts of extraneous conversations and contains a spontaneous discussion initiated by a person who undoubtedly knew he was being recorded, despite not being specifically informed of such.

*Mall Walk of Pioneer Place in Downtown Portland, Oregon.*
https://www.youtube.com/watch?v=iPsKxYMc63U

*Cf. State v. Bichsel*, 790 P.2d 1142, 1144 n.3 (Or. Ct. App. 1990)("Contrary to defendant's assertion, mere encounters are not 'meetings' within the meaning of [the meetings exception]").

These kinds of videos, while often underappreciated, create a record of what life is like in specific places and with the passage of time contribute to the histori-

cal record of a place.[7] Because the only lawful option for someone who wishes to comply with subsection (1)(c) when extraneous conversations arise is to cease recording audio if they cannot notify all the participants, it imposes an undue burden on persons who wish to record newsworthy events, document the places where they live, or show how they experienced the places they visit.

### E. Family and Similar Personal Events.

Or. Rev. Stat. § 165.540 does not provide a general exception for personal and family events nor does it permit the recording of short expressions such as "happy birthday," unless the greeters and all the other participants are specifically informed that the conversation is being recorded. As the video linked below demonstrates, innocent events attended by willing participants often involve conversations, including those initiated by strangers:

*Drive-by birthday parade celebrates Oregon boy as he turns 5.*
https://www.youtube.com/watch?v=bjKC9VZL63A

Similarly, Or. Rev. Stat. § 165.540 does not provide exceptions for personal and family events such as a father taking his son fishing.

---

[7] Other examples of videos containing ambient or extraneous conversations include documenting a zoo, a suburban neighborhood, a park, and a flight out of Portland, Oregon:
https://www.youtube.com/watch?v=7ZZztk9C-i4
https://www.youtube.com/watch?v=rtwdqZKdINs
https://www.youtube.com/watch?v=fJmtgE8zJv0
https://www.youtube.com/watch?v=LBLNMqL-PIQ

Trout Fishing with My Family
https://www.youtube.com/watch?v=tnN-2kNIUxk

The State has no compelling reason to impose a notification requirement on the recording of conversations that take place among family members and friends.

**Conclusion**

Or. Rev. Stat. § 165.540(1)(c) is facially overbroad because it prohibits a substantial amount of protected speech relative to its legitimate sweep. *United States v. Stevens*, 559 U.S. 460, 473 (2010). The State may have a valid interest in protecting its residents from being recorded when those residents have a reasonable expectation of privacy. However, this interest does not warrant broadly imposing the requirements of subsection (1)(c) on persons who wish to make recordings for purposes such as promoting public safety, protecting vulnerable people, documenting their communities, and preserving family memories.

Respectfully submitted,

/s/ Bert P. Krages II
BERT P. KRAGES II
Attorney at Law
6665 S.W. Hampton Street, Suite 200
Portland, OR 97223
(503)597-2525
bert@krages.com

CERTIFICATE OF COMPLIANCE

1.  This brief has been filed with the consent of the Defendants-Appellees and the Plaintiffs-Appellants pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, and Ninth Circuit Rule 29-2(a).

2.  Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Brief of Amicus Curiae Bert P. Krages II in Opposition to the Petition for Rehearing is proportionately spaced, has a typeface of 14 points or more, and contains 3955 words.

DATED: October 18, 2023

/s/ Bert P. Krages II

CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2023, I directed the Brief of Amicus Curiae

Bert P. Krages II in Opposition to the Petition for Rehearing to be electronically

filed with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system. I certify that all participants

in the case are registered CM/ECF users and that service will be accomplished by

the appellate CM/ECF system.

DATED: October 18, 2023

/s/ Bert P. Krages II