No. 22-35271

_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

PROJECT VERITAS; PROJECT VERITAS ACTION FUND,

Plaintiffs-Appellants,

v.

MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney; ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General,

Defendants-Appellees.

_____

APPELLEES' SUPPLEMENTAL BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
benjamin.gutman@doj.state.or.us

Attorneys for Appellees

_____
_____

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.................................1

ARGUMENT.....................................................................................3

    A.    Most conduct covered by Or. Rev. Stat. § 165.540(1)(c) does not trigger First Amendment scrutiny. ...................................4

        1.    Recording another person is not inherently protected activity and implicates that person's freedom not to speak. ..................................................................... 4

        2.    This Court should disavow the broader statement of the rule in *Wasden*................................................. 9

    B.    To the extent the statute triggers First Amendment scrutiny, it lawfully regulates only the manner in which a recording is made. ..........................................................................11

    C.    The exceptions in Or. Rev. Stat. § 165.540(5)(a)–(b) are content-neutral....................................................................15

CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

## Cases Cited

*Anderson v. City of Hermosa Beach*,
    621 F.3d 1051 (9th Cir. 2010)....................................... 7, 9, 10

*Animal Legal Def. Fund v. Wasden*,
    878 F.3d 1184 (9th Cir. 2018)....................................... 6, 9, 10

*Askins v. U.S. Dep't of Homeland Sec.*,
    899 F.3d 1035 (9th Cir. 2018)................................................8

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ...............................................................8

*Chandler v. Florida*,
    449 U.S. 560 (1981) .............................................................14

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) ...................................................................5

*City of Austin v. Reagan Nat'l Advert.*,
596 U.S. 61 (2022) ................................................... 16, 17, 18

*Combined Commc'ns Corp. v. Finesilver*,
672 F.2d 818 (10th Cir. 1982) ...................................15

*Dietemann v. Time, Inc.*,
449 F.2d 245 (9th Cir. 1971) .....................................7

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) ...................................................6

*Estes v. Texas*,
381 U.S. 532 (1965) .................................................14

*Ex parte Hamilton*,
599 S.W.3d 312 (Tex. App. 2020) ...........................13

*Fordyce v. City of Seattle*,
55 F.3d 436 (9th Cir. 1995) .......................................9

*Harper & Row, Publishers v. Nation Enterprises*,
471 U.S. 539 (1985) ...................................................6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
515 U.S. 557 (1995) ...................................................5

*Project Veritas v. Schmidt*,
72 F.4th 1043 (9th Cir. 2023)
*vacated*, 95 F.4th 1152 (9th Cir. 2024) .................. 3, 9, 11, 12, 14, 17, 19

*Smith v. Helzer*,
95 F.4th 1207 (9th Cir. 2024) ....................................3

*Snyder v. Phelps*,
562 U.S. 443 (2011) ...................................................8

*Texas v. Johnson*,
491 U.S. 397 (1989) ................................................5, 6

*United States v. Edwards*,
785 F.2d 1293 (5th Cir. 1986) ..................................15

*United States v. Hansen*,
599 U.S. 762 (2023) ........................................ 3, 4, 5, 11, 15

*United States v. Hastings*,
   695 F.2d 1278 (11th Cir. 1983) .................................................15

*United States v. Yonkers Bd. of Educ.*,
   747 F.2d 111 (2d Cir. 1984) ....................................................15

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ...............................................................16

## Constitutional and Statutory Provisions

Or. Rev. Stat. § 165.540(1)(c) ..................................... 1, 2, 4, 8, 11, 18

Or. Rev. Stat. § 165.540(5)(a) ...........................................................16

Or. Rev. Stat. § 165.540(5)(a)–(b)................................................3, 15

Or. Rev. Stat. § 165.540(5)(b) ...........................................................17

Or. Rev. Stat. § 165.540(5)(b)(B).....................................................18

Or. Rev. Stat. § 165.540(6)(a)(A)......................................................12

U.S. Const., Amend. I............................ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

_____

## INTRODUCTION AND SUMMARY OF ARGUMENT

Or. Rev. Stat. § 165.540(1)(c) allows the recording of any conversation—public or private—if all participants are "specifically informed" that they are being recorded. This Court invited supplemental briefing on whether that law triggers First Amendment scrutiny. The Court need not answer that question if it agrees that the law, to the extent it regulates First Amendment-protected activity, is a valid content-neutral regulation of the manner of recording conversations. But in most circumstances, a restriction on secretly recording someone else's speech does not trigger First Amendment scrutiny at all. For that reason as well, the law is facially constitutional.

Although previous decisions may have suggested that all recordings are protected by the First Amendment, this Court should disavow those statements as sweeping too broadly. Recording someone else's speech is not inherently expressive conduct. It also implicates the other person's freedom *not* to speak, particularly when done secretly. There is no First Amendment right to eavesdrop or wiretap. And freedom of speech does not mean the freedom to use another person to create speech. A tattoo may be protected speech, but the First Amendment does not confer a right to tattoo someone else without their consent. The First Amendment may protect the right to take consensual nude

photographs, but it does not confer a right to take those photographs surreptitiously.  So too with recordings: Any constitutional right to create recordings would not extend to secretly recording someone else's speech.  The act of recording someone else's speech may be protected by the First Amendment in limited circumstances, such as when the act itself is sufficiently imbued with the elements of communication to constitute expressive conduct. There may also be a right to create recordings of certain matters of public concern, such as public statements and actions of government officials.  But most of the conduct regulated by Or. Rev. Stat. § 165.540(1)(c) involves nonexpressive recording of matters of purely private concern, and that regulation does not implicate the First Amendment.

To the extent the statute regulates conduct that implicates the First Amendment, it imposes a reasonable restriction on the manner of the recording. The statute is narrowly tailored and leaves ample alternative channels for communication because it allows recording after notification and because it allows after-the-fact reporting.  The panel's conclusion that after-the-fact reporting is inadequate contradicts well-settled case law allowing courts to restrict recording in the courtroom, with after-the-fact reporting as an adequate alternative means of gathering information.

The exceptions in Or. Rev. Stat. § 165.540(5)(a)–(b) are content-neutral. Those exceptions—for conversations *during* a life-endangering felony and *involving* an on-duty law enforcement officer—turn not on the content of the conversation but the circumstances in which it is held. The exceptions do not differentiate based on the topic discussed, the message conveyed, or the viewpoint of the speaker.

## ARGUMENT

This is a facial challenge to a state statute. *Project Veritas v. Schmidt*, 72 F.4th 1043, 1054 (9th Cir. 2023) ("Project Veritas's claim is properly construed as a facial challenge to section 165.540."), *vacated*, 95 F.4th 1152 (9th Cir. 2024). Facial challenges are "disfavored," *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir. 2024), and must clear a high threshold. "[L]itigants mounting a facial challenge to a statute normally must establish that *no set of circumstances* exists under which the statute would be valid." *United States v. Hansen*, 599 U.S. 762, 769 (2023) (emphasis in original; cleaned up). In the First Amendment context where a party challenges a law as overbroad, courts will invalidate a law if "the statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Id.* at 770 (cleaned up). But the "unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. In the absence of a

lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Id.* (citations omitted).

Here, Or. Rev. Stat. § 165.540(1)(c) "encompasses a great deal of nonexpressive conduct—which does not implicate the First Amendment at all." *Hansen*, 599 U.S. at 782. And to the extent it covers conduct that implicates the First Amendment, it imposes a content-neutral restriction on the manner of engaging in that conduct by requiring that the participants be specifically informed that their conversation is being recorded. At least in the overwhelming majority of cases, that manner restriction satisfies the First Amendment. Because the statute's plainly legitimate sweep dwarfs any potentially unconstitutional applications, plaintiffs' facial challenge fails.

## A. Most conduct covered by Or. Rev. Stat. § 165.540(1)(c) does not trigger First Amendment scrutiny.

Although the act of recording another person's speech may be covered by the First Amendment in limited circumstances, it is not inherently protected. This Court should disavow statements from previous decisions suggesting that it is, because those decisions overstated the principles on which they relied.

### 1. Recording another person is not inherently protected activity and implicates that person's freedom not to speak.

At its core, the First Amendment protects the communication of ideas. Although "[t]he First Amendment literally forbids the abridgment only of

'speech,'" activity that is "sufficiently imbued with elements of communication" falls within the scope of the First Amendment. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Conversely, even words may fall outside the scope of the First Amendment when, as with obscenity or fighting words, they "are no essential part of any exposition of ideas," *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942), or have "no social value," *Hansen*, 599 U.S. at 783. The First Amendment protects the communication of ideas even when those ideas are abstract or subject to interpretation by the viewer—for example, the "painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569 (1995). But the common denominator running through First Amendment jurisprudence is communications from a speaker to a listener, whether through direct speech or through expressive conduct.

Recording someone else's speech is not inherently communicative. A person does not necessarily communicate anything by pushing a button to cause a machine to record a conversation. Pushing the button is conduct, not speech or a direct substitute for speech. Of course, some recordings may involve "decisions about content, composition, lighting, volume, and angles" that "are expressive in the same way as the written word or a musical score." *Animal*

*Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018). When those aspects of the conduct are "sufficiently imbued with elements of communication," the act of recording may be entitled to First Amendment protection. *Texas*, 491 U.S. at 404. But the act of recording by mechanical device is not inherently expressive.

First Amendment protections are further limited when the recording is of the speech of another person. "The First Amendment securely protects the freedom to make—or decline to make—one's own speech; it bears less heavily when speakers assert the right to make other people's speeches." *Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003). That limitation reflects that the person whose speech is at issue typically also has the freedom *not* to speak. Thus, for example, in *Harper & Row, Publishers v. Nation Enterprises*, 471 U.S. 539, 559 (1985), the Supreme Court held that the First Amendment did not give a news magazine the right to publish quotes from President Ford's unpublished autobiography about his decision to pardon President Nixon. The Court accepted that the subject matter was of significant public concern. *Id.* But it recognized that the First Amendment also embodies a "freedom *not* to speak publicly, one which serves the same ultimate end as freedom of speech in its affirmative aspect." *Id.* (emphasis in original).

The freedom not to speak publicly explains why the First Amendment generally does not protect eavesdropping. There is no First Amendment right to use a parabolic microphone to listen to, much less to record, someone else's private conversation surreptitiously. *See Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) ("The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office."). Nor does the First Amendment generally confer a right to wiretap or to use drone-mounted cameras to capture someone else's private activity.

The freedom not to speak also explains why there is no right to coopt someone else into one's otherwise First Amendment-protected expression. Take tattoos, for example. A tattoo is generally a work of art protected by the First Amendment, and the act of drawing a tattoo may well be protected as well. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059–62 (9th Cir. 2010). But that does not mean that the First Amendment confers a right to tattoo someone else without their consent. The tattoo is, at least in part, the expressive activity of the person who receives it, and that person's consent to engage in the expressive activity is essential.

Recording someone else's speech similarly implicates the freedom not to speak. The act of recording creates a work that is at least partly the speech of the person recorded. That person has a substantial interest in whether that work

is created in the first place. Any First Amendment analysis must account for the right of the recorded not to speak on the recording. *See Bartnicki v. Vopper*, 532 U.S. 514, 532 (2001) (recognizing that "[p]rivacy of communication is an important interest").

There may be limits to the freedom not to speak. Although this Court need not decide the question here, the First Amendment may protect the act of creating a recording of certain public events that involve matters of legitimate public concern—for example, "law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *cf. Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (explaining that speech on "matters of public concern" receives greater protection than "matters of purely private significance"). Those recordings may not implicate the freedom not to speak in the same way, because they involve government officials publicly speaking in their official capacity.

But most conversations involve matters of private rather than public concern. *See Snyder*, 562 U.S. at 453 (giving examples of public and private concern). At a minimum, therefore, most of the conduct covered by Or. Rev. Stat. § 165.540(1)(c) falls outside the limited circumstances that might justify First Amendment protection.

**2.      This Court should disavow the broader statement of the rule in *Wasden*.**

In ruling to the contrary, the panel relied on *Wasden* for the proposition that "the act of recording is *itself* an inherently expressive activity protected by the First Amendment." *Project Veritas*, 72 F.4th at 1055 (emphasis in original; cleaned up).  But as an unqualified statement, that rule finds no support in case law or common sense.

*Wasden* relied on *Anderson*, a case about tattoo shops, and *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995), a case about an alleged assault by a police officer while the plaintiff was filming a protest.  *Wasden*, 878 F.3d at 1203.  Neither case supports the conclusion that recording is *always* purely expressive activity protected by the First Amendment.

*Fordyce* held only that there were disputed issues of material fact about whether a police officer assaulted the plaintiff while the plaintiff was exercising his First Amendment rights.  55 F.3d at 439.  Although it stated in passing that the First Amendment right was "to film matters of public interest," *id.*, it did not analyze whether and to what extent the First Amendment protects the act of creating an audio or visual recording—much less hold that the right extends even to recording matters of private interest.

*Anderson* did not involve recordings at all.  It held that the tattooing process is entitled to First Amendment protection because it is "inextricably

intertwined with the purely expressive product (the tattoo)." 621 F.2d at 1062. By analogy, that analysis might suggest that the First Amendment protects the process of creating a recording of one's own speech or the speech of another person who consented to be recorded. But *Anderson* did not purport to lay down a rule for creating an expressive product *without* the knowledge, much less consent, of the other participant.

Although *Wasden* overstated the rule, this Court does not necessarily need to overrule its ultimate holding, which struck down a ban on recording agricultural operations without the owner's consent. The recordings at the heart of the case involved "food safety and animal cruelty," which may well qualify as matters of public concern. *Wasden*, 878 F.3d at 1190. The law also did not target recording another person's speech, so it did not necessarily implicate the freedom not to speak. And the law required consent, not just notice, so it effectively gave the facility owner veto authority over the creation of the recording. Those features may mean that *Wasden* was correctly decided; this Court need not resolve that here. But the holding of *Wasden* does not carry over to the statute at issue here, which primarily covers matters of private concern, is limited to recordings of someone else's speech, and even then allows recording of any conversation as long as the participants are notified.

The First Amendment may protect the act of creating some recordings, but the act of recording is not inherently expressive and is not necessarily covered. Or. Rev. Stat. § 165.540(1)(c) thus covers a great deal of conduct that does not trigger First Amendment scrutiny at all. That "plainly legitimate sweep," *Hansen*, 599 U.S. at 770, dwarfs any potentially unconstitutional applications of the statute.

**B.** **To the extent the statute triggers First Amendment scrutiny, it lawfully regulates only the manner in which a recording is made.**

Even if some or all recordings constitute expressive conduct protected by the First Amendment, Or. Rev. Stat. § 165.540(1)(c) is facially constitutional. The statute allows the recording of *any* conversation, regardless whether one of the statutory exceptions applies. It requires only that the participants be specifically informed that their conversation is being recorded.

Defendants already briefed at length in their appellees' brief why that requirement is a reasonable restriction on the *manner* of protected activity that survives intermediate scrutiny. (Appellees' Br. 12–39). The panel reached a contrary conclusion largely because it thought the statute was not narrowly tailored to protect privacy and did not leave ample alternative channels for communication. *Project Veritas*, 72 F.4th at 1060, 1065. Neither reason is sound.

First, the panel misconstrued the state statute in concluding that the law is not narrowly tailored because "protesters demonstrating in favor of their political views may have no objection to unannounced recordings of conversations, which would provide more publicity about their goals and beliefs." *Id.* at 1061. A protest would likely fall within the exception in § 165.540(6)(a)(A), which dispenses with the "specifically informed" requirement for unconcealed recording of "[p]ublic or semipublic meetings such as * * * public speeches, rallies and sporting or other events." Regardless, the "specifically informed" requirement would pose no real barrier to recording protesters who wanted to be recorded. A requirement to obtain express consent to tattoo someone else does not fail narrow tailoring just because some recipients would consent if asked.

Second, even if the "specifically informed" requirement effectively prevented the recording of some conversations, there would still be ample alternative channels for communication of the information. The panel reasoned that "notification would effectively destroy the intended content of the recording" because persons being recorded may be less candid. *Project Veritas*, 72 F.4th at 1065. But that is no more a problem here than it would be for a law that prohibited secretly taking photographs of a person who is nude. The First Amendment might well protect the act of taking a nude photograph with that

person's consent. It does not, however, give the photographer the right to hide cameras in locker rooms or bathrooms to capture nude photographs surreptitiously. Notification would effectively destroy the intended content of the photos—nudity—but that is not a consequence of constitutional magnitude.

That reasoning applies to public as well as private places. The government may ban surreptitious "upskirt" photography in public places, even if that effectively destroys the intended content of the photographs. *See Ex parte Hamilton*, 599 S.W.3d 312, 321 (Tex. App. 2020) (citing examples of "legitimate applications" of such a law in prosecutions of "defendants taking 'upskirt' photographs or videos of complainants' 'intimate areas' without their consent while they were shopping"). More generally, the First Amendment does not apply differently in public and private spaces. To be sure, in private spaces, the property owner may have a right to limit speech in the way that the government could not. But the government does not have carte blanche to regulate speech in private spaces. If the First Amendment confers a right to secretly record others, it would be difficult to justify a ban on secret recordings in private places.

The state statute here also allows another alternative to announced recording: publishing a written account of the conversation. The panel concluded that "after-the-fact reporting of an undercover interview or

encounter" is not sufficient because "[a]udiovisual recording is a unique medium of communication." *Project Veritas*, 72 F.4th at 1065–66. But that reasoning is difficult to square with well-settled case law establishing that there is no First Amendment right to record court proceedings.

The leading opinion on that issue is Justice Harlan's controlling concurrence in *Estes v. Texas*, 381 U.S. 532 (1965). *See also Chandler v. Florida*, 449 U.S. 560, 573 (1981) (explaining that Justice Harlan provided the fifth vote for the result in *Estes* and so his opinion "must be read as defining the scope of that holding"). Justice Harlan rejected as "greatly overdrawn" the argument that the Free Speech and Press Clauses of the First Amendment embody a right to televise trials. Although he recognized that many trials are "newsworthy" and that "televising them might well provide the most accurate and comprehensive means of conveying their content to the public," Justice Harlan dismissed those considerations as "policy arguments" and "not arguments of constitutional proportion." *Estes*, 381 U.S. at 589 (Harlan, J., concurring). "The rights to print and speak, over television as elsewhere, do not embody an independent right to bring the mechanical facilities of the broadcasting and printing industries into the courtroom." *Id.* Although "[o]nce beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the

courtroom," "the line is drawn at the courthouse door." *Id.* Lower courts have uniformly adopted Justice Harlan's reasoning as the constitutional rule even while recognizing that courts may, as a policy matter, permit recording or broadcasting of proceedings. *See, e.g.*, *United States v. Edwards*, 785 F.2d 1293, 1295 (5th Cir. 1986) (per curiam); *United States v. Yonkers Bd. of Educ.*, 747 F.2d 111, 113 (2d Cir. 1984); *United States v. Hastings*, 695 F.2d 1278, 1281 (11th Cir. 1983); *Combined Commc'ns Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982).

If after-the-fact reporting is an adequate alternative for the courtroom, it is adequate here as well. And even if there were occasional applications of the statute where that alternative was insufficient, those applications would not be so "substantially disproportionate to the statute's lawful sweep" to support a facial challenge. *Hansen*, 599 U.S. at 770.

**C.     The exceptions in Or. Rev. Stat. § 165.540(5)(a)–(b) are content-neutral.**

If this Court agrees with the severability analysis in the panel's dissent, it need not address whether the exceptions codified at Or. Rev. Stat. § 165.540(5)(a)–(b)—conversations during a life-endangering felony and involving a law enforcement officer—are content-based regulations of speech. But if it reaches the issue, the court should conclude that the exceptions are content-neutral.

A regulation is facially content-based only if it "targets speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed." *City of Austin v. Reagan Nat'l Advert.*, 596 U.S. 61, 69 (2022) (cleaned up). The principal inquiry is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A regulation can be content-neutral even if it requires examining the content of the speech to determine if it applies; the regulation is not content-based unless its purpose is to "single out any topic or subject matter for differential treatment." *City of Austin*, 596 U.S. at 71. "The government's *purpose* is the controlling consideration," and "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791 (emphasis added).

Neither exception at issue here has a content-based purpose.

First, Or. Rev. Stat. § 165.540(5)(a) exempts "[a] person who records a conversation during a felony that endangers human life." As the word "during" reflects, the exception turns not on the content of the conversation but rather the circumstances surrounding the conversation. One typically would not need to know anything about the content of the conversation itself to determine whether

the exception applies. It applies if someone—say, the person who made the recording—can describe the conduct that constituted a life-endangering felony. That conduct may have nothing to do with the words spoken during the conversation.

At times it may also be possible to determine that a life-endangering felony was afoot from the content to the conversation. But even if that were the only way to do so, under *City of Austin* the regulation would remain content-neutral. The exception does not single out a particular topic of conversation for differential treatment; it applies regardless of the topic of conversation. The exception reflects no disagreement with a particular message.

The panel misconstrued the state law in concluding that the exception pivots on "what the recording captures." *Project Veritas*, 72 F.4th at 1057. What the recording captures is irrelevant. A word-for-word identical recorded conversation could fall within or without the exception depending on what was happening at the time—whether or not a life-endangering felony was being committed. The exception turns on the circumstances under which the recording is made, not the content of the recording.

Second, Or. Rev. Stat. § 165.540(5)(b) allows the *open* recording of a conversation involving an on-duty law enforcement officer in certain circumstances. In practice, that exception differs only slightly from the rule; it

replaces the "specifically informed" requirement with a requirement that the recording be made "openly and in plain view of the participants in the conversation." Or. Rev. Stat. § 165.540(1)(c), (5)(b)(B). It does not allow the sort of secret recordings that plaintiffs want to create.

Even if the difference between specifically informing and open recording matters, the exception again turns not on the content of the conversation but circumstances surrounding it—in particular, the identity of the participants. One need not know anything about the content of the conversation to determine whether the exception applies, and the exception does not single out a particular topic of conversation for differential treatment. Here too, the panel misconstrued the state law if it thought that the exception pivoted on the content of the recording rather than the identity of the participants. Conversations involving police officers are no more a distinct topic for these purposes than conversations in a courtroom, which longstanding precedent allows the government to regulate.

To be sure, a regulation that is facially content-neutral would nonetheless be impermissible if there were evidence that "an impermissible purpose or justification" underpinned it, *City of Austin*, 596 U.S. at 76—in other words, that the regulation was a pretext for discrimination based on content or viewpoint. But there is no such evidence here. As the panel recognized, the

during-a-felony exception was adopted to enable police officers to use body wires during undercover operations, and the law-enforcement exception was adopted out of concern that the right to record on-duty police is constitutionally protected activity. *Project Veritas*, 72 F.4th at 1051–52. Neither purpose reflects an intent to discriminate against a particular communicative message.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

/s/ Benjamin Gutman
BENJAMIN GUTMAN #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorneys for Defendants-Appellees
Michael Schmidt and Ellen Rosenblum

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellees' Supplemental Brief is proportionately spaced, has a typeface of 14 points or more and contains 4,059 words.

DATED:  May 28, 2024

/s/  Benjamin Gutman
_____
BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorney for Defendants-Appellees
Michael Schmidt and Ellen Rosenblum

# CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2024, I directed the Appellees'
Supplemental Brief to be electronically filed with the Clerk of the Court for the
United States Court of Appeals for the Ninth Circuit by using the appellate
CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and
that service will be accomplished by the appellate CM/ECF system.

/s/  Benjamin Gutman

BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorney for Defendants-Appellees
Michael Schmidt and Ellen Rosenblum